ROSSI v. CUST

(July 1, 1931. Opinion and Decree.)

George Piazza, of New Orleans, attorney for plaintiff, appellee.

Walter B. Hamlin, of New Orleans, attorney for defendant, appellant.

MORENO, J. ad hoc. This case involves largely the question of the identity of an offending automobile. The plaintiff alleges that the automobile which caused injury to his minor child ·was operated by the defendant, while the defendant places his sole reliance upon an alibi. We are convinced that it was the automobile of the defendant which caused·the collision which resulted in injury to the minor son of the plaintiff.

Dr. Paul A. Rossi, as tutor of his minor child, Robert P. Rossi, sued Robert M. Cust in the Civil District Court for $2,500 for injuries to the child, and for the expenses connected with the accident, which had been paid by the plaintiff. There was a judgment in favor of the plaintiff individually in the sum of $75 for medical expenses, and in his favor as tutor of his minor son in the sum of $300, and the defendant has appealed from this judgment.

The undisputed facts of the record show that in· the early evening of Sunday, May 4, 1930, Dr. Rossi and his family were returning on the Chef· Menteur highway from the Gulf coast and that his automobile was being driven by Mrs. Rossi in a lane of traffic on the right side of the road. When the automobile of the plaintiff was about one mile on the city side of the Pontchartrain bridge, an old-fashioned green Lincoln coupe, sitting high in the air, and carrying two spare tires, proceeding in the direction of the city, left the city-bound lane of traffic and darted in between it and the traffic going from the city towards the Pontchartrain bridge. This car was traveling at a high rate of speed and, as it approached a Chevrolet automobile going in the opposite direction,

driven by a negro named Henry Owens, the latter saw the Lincoln coupe when a short distance away and pulled as far to his right side of the road as it was possible.

However, the distance between the two lanes of traffic was not sufficient to permit the Lincoln coupe to pass in safety and it struck the Chevrolet automobile and threw it across the roadway. Mrs. Rossi, coming along at a moderate rate of speed, was suddenly confronted with the situation of a car being thrown across her pathway and turned as far to the right side of the road as possible and jammed on her brakes. There was a slight impact between the overturned Chevrolet car and the Rossi car, and, either that or the suddenness with which the brakes were put on caused the Rossi child, aged 5, to be thrown forward against ·the bar that is attached to the front seat for the purpose of holding coats and other things of that kind.

There can be no question of the fact that this accident was due solely to the negligence of the driver of the Lincoln coupe and there remains only the question as to whether the defendant was that driver. He says that his car was not in the accident, but the direct testimony of witnesses whose credibility remains unimpeached, and many collateral circumstances, convince us that the offending car was driven by the defendant at the time of the accident.

Owens and James Wiggins and Ferdinand Dominick, who were passengers in ·the Chevrolet, all testify that the car which caused the accident was an old-fashioned green Lincoln coupe carrying two spare tires and that after the collision this car went ·down the road for some

distance and thereafter returned and its driver inquired whether anyone had been hurt in the accident, and then drove out towards the Pontchartrain bridge. They all testify positively that the car which the defendant admits to have been driving on the day of the accident was the one which caused the accident.

Dr. Rossi and Mrs. Rossi testify substantially alike regarding the accident. Dr. Rossi says that he saw the car which caused the accident, and that, after the accident, he kept it in view and it continued down the road for some distance and then returned. He leaves no doubt as to the import of his testimony, which is clearly to the effect that the green coupe which caused the collision and the Cust car are one and the same. He says that a day or two after the accident, he saw this car in the repair shop and positively identified it as the Lincoln coupe which had struck the Chevrolet. While the testimony of Mrs. Rossi is not as full as that of Dr. Rossi on this point, yet it leaves no doubt regarding her identification of the defendant's car as the one which caused the accident.

Mr. William R. Lee, the manager of the Drive Yourself, Inc., which was the owner of the Chevrolet car driven by Owens, says that after the accident he made an investigation to ascertain the ownership of the Lincoln coupe. He had been given the license number of the car and found that it had been issued to the owner of a Diana car. This car had been traded to the Lefebvre Motor Company and upon taking the matter up with its officials, he ascertained that the license plates had been used on a Lincoln coupe. He was told that this car was in a repair shop, as its left rear fender had been damaged on the day of the accident, while the car was standing in front of the home of a friend of the defendant. The coupe which had caused the accident was also struck on the rear left fender. The paint on this car was the same paint as was found on the fender of the Chevrolet which had resulted from the scraping of the two cars. The mechanic who made the repairs to the Chevrolet car testified that its fenders had scraped with a green car so that there is no doubt as to the color of the car which caused the accident.

Three days after the accident three of the colored passengers in the Chevrolet car went to the repair shop and unhesitatingly picked out the coupe of the defendant as the one which had overturned the car in which they were riding.

There can be no question that, upon the testimony of the witnesses for the plaintiff, the identity of the car which caused the accident has been fully established. There remains simply the question of whether the defendant has produced evidence that would destroy the preponderance of evidence in plaintiff's favor. We are of the opinion that he has failed to do so. The testimony which the defendant has produced is weak and inconclusive and leaves the court unconvinced of the seriousness of the defense.

Defendant says that on the day of the accident he went to the home of a friend, at 635 Toulouse street, and parked his automobile in front of the house. Some time around 1:30 o'clock p. m., he heard a crash and, leaving the apartment to investigate, he found that his car had been run into by another car which was proceeding up Toulouse street against traffic and turned into Royal street. After examining the damage to his left rear fender, he returned to the apartment and remained

there until 3:30 or 4 o'clock p. m. He then made up his mind to go riding for pleasure and also for the purpose of finding the automobile which struck his car. He did not have the license number of that car and had caught merely a fleeting glimpse of it, and was not able to describe it more accurately than that it was an old Cadillac open car. He is unable to describe the course that he took, except that he did go to the City Park and West End, and then drove out the Chef Menteur road until he came to the accident. He says that he stopped long enough to find out if anyone was hurt and continued on to the Pontchartrain bridge and then returned.

Upon his return he went to the apartment of his friends and remained there for some time, and when he left, he decided to go to the Third Precinct police station to see if the car which had damaged his car had been picked up. He made no report to the police of the damage to his car and gave the police no description of the car which he said had struck his car. The fact that he waited for a number of hours before going to the police station to report the accident to his car, particularly in view of the fact that he seeks to make it appear that the driver of that car was drunk, and in view of the fact that the police station was but a short distance away, inclines the court strongly to the opinion that his purpose in going to the police station later at night was not to report the damage to his car, but was to ascertain whether or not complaint had been made against him for the accident which had occurred to the Rossi child.

His friend also testified substantially along the lines of the testimony of the defendant, but says that when they left to go riding, it was purely for pleasure, as no one had the number of the car which

had run into defendant's car and that, therefore, it would have been foolish to attempt to locate the car while driving aimlessly about the city. This witness is also unable to detail the movements between the time they left the apartment and the time of the accident to the Rossi car. He says that Mr. Cust left the apartment after the return from the scene of the accident at about 11:30 p. m., but did not say anything about going to the police station to report the damage which had been done to the Cust car while standing in front of his home.

The wife of this witness, who was also in the car and knew as much about the matter as the defendant and her husband, was not called as a witness. It seems rather strange that in a matter involving the identity of the Cust car as a participant in the accident, this lady should not have been called as a witness if she could have corroborated the testimony of Mr. Cust and her husband. No explanation is made of the failure to call her as a witness and there is nothing in the record to show that she was not available, and, therefore, there naturally arises the presumption that if she had been called, her testimony would have contradicted rather than supported the testimony of the two witnesses for the defendant. However, the presumption arising from her failure to testify is not necessary to support the conclusion that the cause of the accident was the negligent driving of the defendant. That conclusion is amply supported by the other testimony in the record.

After an examination of the record, we are of the opinion that the trial judge, who saw the child who had been injured and who apparently went into the question of his injuries with considerable care, was correct in awarding $300 for his in-

juries, and that the other amount claimed by the plaintiff for expenses has been amply proven.

The judgment of the lower court is, therefore, affirmed.

WESTERFIELD, Judge, and DUNBAR, JR., Judge ad hoc, participating.