ODOM, J.
 

 Plaintiff deposited in the hands of Vallon & Jordano Inc., real estate agents, the sum of $600 cash and his note for a like amount in connection with his proposal to purchase, through said realtors, a certain residence owned by Thomas L. Powell. The deal was never consummated, and plaintiff prosecutes this suit to recover the amount deposited and to have the contract canceled.
 

 Plaintiff prayed for judgment against the real estate agent, and their surety, the Union ¡Casualty Company, and against Powell for the amount of the deposit and for a return of his note. The casualty company filed an exception of prematurity, which was sustained. Powell answered that neither the cash deposit nor the note was in his hands, and prayed that plaintiff’s demands against him for a money judgment be dismissed.
 

 The real estate agents admitted in answer that they had received and were in possession of the cash and the note, and set up as their reason for refusing to return the amount deposited with them that plaintiff was due them a commission on the transaction amounting to $605, which had been earned under the stipulations of the contract, which should be paid out of the amount deposited.
 

 The trial judge dismissed plaintiff’s suit against Powell, and his ruling to that effect is not contested. He rendered judgment for plaintiff and against Vallon & Jordano' Inc., for $600, and ordered it to return the $600 note within 30 days, and, in default thereof, that there be judgment against it for $600 additional. There was judgment canceling the contract, between plaintiff and Powell. Vallon & Jordano, Inc., appealed.
 

 1. Plaintiff, Boisseau, owned two lots on Metairie ridge which he valued at $2,500. He desired to purchase a residence owned by Thos. L. Powell and to give in exchange his two lots as part payment. He went to the office of Vallon & Jordano, Inc., real estate dealers, and made known his desires. Without consulting Powell, the realtors had Boisseau sign a contract stipulating that he offered to sell his two lots for $2,500, and that:
 

 “Contingent upon the acceptance of my above offer and in order to effect this exchange, I offer and agree to purchase the property known as a single six-room raised basement colonial house on lots #47 and #48 in block #6, Livingston Place, Metairie Ridge,
 
 *495
 
 Jefferson Parish
 
 * * *
 
 for the sum of $12,000 on terms-cash.”
 

 Then follows this provision:
 

 ‘‘Loan of ninety five hundred dollars ($9500.-00) to be obtained from any New Orleans bank, homestead or mortgage office.”
 

 ' Plaintiff’s proposal was submitted by Vallon & Jordano, Inc., to Powell, the owner of the residence, who accepted it.
 

 The provision in the contract above quoted with reference to the loan of $9,500, and the testimony adduced on the trial, show that plaintiff’s proposal was contingent upon his ability to secure a loan on the residence which he proposed to purchase. He made it clear to the realtors that he had no cash on hand, and that,, unless the owner would accept his lots in exchange at $2,500, and if he could not effect a loan of $9,500, he would not be able to go through with the proposal. His offer therefore was only conditional.
 

 • The testimony shows that plaintiff made a reasonable bona fide effort to effect a loan on the residence, but failed. There was already a mortgage on the house for $7,500, which the mortgagee was willing to carry. But he needed $2,000 additional. The holder of the mortgage. was willing to increase the amount of .the loan to. $9,500, provided plaintiff would put up additional collateral. He tried to get the. required loan from other loan companies and from banks, but in every instance additional collateral was demanded. .
 

 Plaintiff testified that, while he had some collateral which he was willing and offered to .pledge in order to get the required loan, he could not meet the demands of prospective •lenders without divesting himself of all he had. According to his testimony, which is not contradicted, the demands made by those from whom he sought the loans were beyond his means.
 

 Vallon & Jordano, Inc., offered testimony tending to show that plaintiff could have secured the loan, and that he had admitted to them that he could. Possibly he could, but it w;as never contemplated that he should do more than make reasonable efforts to comply with his proposal, and this we think he did. ■
 

 In this connection it is pertinent to note that Powell has never demanded, so far as the record disclosed, that plaintiff comply with his offer. He seems to be satisfied. The real estate agent is the one who is complaining and for reasons which are clear.
 

 Plaintiff’s proposal to purchase the property of Powell having been conditioned upon his ability to procure a loan of $9,500, and, he having made reasonable and bona fide efforts to do so without success, the trial judge properly ordered the contract canceled.
 

 2. The principal, and we may say the only real, controversy in the case is between Vallon & Jordano, Inc., the real estate agents, and Boisseau, the plaintiff, over the payment of commissions.
 

 Vallon & Jordano, Inc., contend that they are entitled to a commission of 4 per cent, on $12,000, which was the price asked by Powell for his property, plus 5 per cent, on $2,500, the price placed by Boisseau on his lots which, he proposed to exchange in part payment for the Powell residence, amounting in the aggregate to $605. It contends that it is entitled to these commissions, even though Boisseau was unable to carry out his conditional offer,
 
 *497
 
 and even though the contract should he annulled by the court.
 

 It bases its contention primarily upon certain stipulations in the contract or proposal relating to the payment of commissions. The payment of the agent’s commissions is mentioned five times in the contract or proposal. Boisseau proposed
 
 to
 
 give in exchange his two lots, which he valued at §2,500, in part payment for the residence owned by Powell provided the Powell residence could be obtained at $12,000. The contract or proposal recites:
 

 “If this offer is accepted, purchaser must deposit with Vallon
 
 &
 
 Jordano, Inc., agent,
 
 immediately
 
 Two Hundred and Fifty Dollars ($250) as part of the purchase price, and I agree to pay Vallon & Jordano, Inc., agent, the commissions of 5% on purchase price,
 
 which is earned upon the acceptance of this offer.”
 

 It is then provided that, “contingent upon the acceptance” of his offer, Boisseau should purchase Powell’s property at $12,000 and deposit immediately with Vallon ■& Jordano, Inc., the sum of $1,200 as part of the purchase price and vendor “to pay Vallon & Jordano Inc., agent, the commission of four (4)
 
 %
 
 on purchase price,
 
 which is earned upon signing of this agreement.”
 

 Further on the following stipulation appears:
 

 “In the event either title is not valid, and can not in reasonable time at reasonable expense be made valid, the contract shall be null and void,
 
 ioithout prejudice however to the agent’s commission, which is earned upon the signing of this agreement.”
 
 (Italics here and elsewhere ours.)
 

 It is then provided that, in ease either party fails to comply with his agreement, the other shall have the right to declare the deposit ipso facto forfeited or may demand specific performance, and:
 

 “In case of forfeiture of deposits as provided above, the total commissions earned by the agent stall be paid out of said deposits” and “The commission is earned on the signing of this agreement and
 
 shall not be affected by 'any subsequent agreement of the parties here~ to or by the annulment of this contraet by any court.”
 
 *
 

 In sum, it is provided that Boisseau should pay this real estate agent a commission, even though his conditional offer could not be carried out, due to his inability to secure the contemplated loan, and even if no sale or exchange could be made because the title to either property was not valid and could not
 
 “in reasonable time and at reasonable expense be made valid,”
 
 and for that reason the contract should be “null and void,” and, finally, even though the contraet should be annulled “by any court.”
 

 3. The original of this contract is not before us, and for that reason we have no means of knowing what portions of it were printed or what portions were filled in by the agénts. The copy in the record is headed “Exchange or Trade Agreement adopted by the New Orleans Real Estate Board.” It was prepared by the real estate agent, signed by Boisseau, and accepted by Powell.
 

 Counsel for Vallon & Jordano, Inc., realtors, say that contracts not prohibited by law constitute the law; between the parties and are enforceable against them, even though they were unwise in making the agreements,
 
 *499
 
 and that “courts do not sit to relieve persons of the results of their bad judgment.”
 

 That is true enough, but courts do sit to interpret instruments evidencing obligations. A contract or obligation “must not be confounded with the instrument in writing by which it is witnessed. The contract may subsist, although the written act may, for some defect, be declared void; and the written act may be good and authentic, although the contract it witnesses be illegal. The contract itself is ..only void for some cause or defect determined by law.” C. C. art. 1702.
 

 When courts are called upon to interpret written instruments purporting to evidence obligations, if any doubt arises, they look beyond the mere wording of the instrument itself and endeavor to ascertain what was the true intent of the parties, for it is the intent of the parties which determines whether an obligation was assumed.
 

 The Civil Code, under the heading “Of the Interpretation of Agreements,” beginning with article 1945, prescribes the general rules for the interpretation of agreements. In article 1945 it is provided:
 

 “That courts are bound to give legal effect to all such contracts according to the true intent of all the parties,” and:
 

 “That the intent is to be determined by the words of the contract, when'these are clear and explicit, and lead to no absurd consequence.
 

 “That it .is the common intent of the parties, that is, the intention of all, that is to be sought for; if there was a difference'in this intent, there was no common consent, and consequently no contract.”
 

 Article 1950 reads as follows:
 

 “When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms.”
 

 Articles 1964 and 1965 speak of “equity” and “usage” and article 1966 reads in part:
 

 “By the word usage mentioned in the preceding articles, is meant that which is generally practiced in affairs of the same nature with that which forms the subject of the contract.”
 

 Following these codal rules for the interpretation of agreements and applying them to the case before us, we hold that Boisseau is not bound to pay the commissions demanded.
 

 The words o'f this instrument are “clear and explicit” that he was to pay these commissions, even though the motive and purpose which prompted him to sign it could not possibly be attained. But we cannot give effect to these provisions when to do so would lead to an “absurd consequence.”
 

 • Construing the contract as a whole and in the light of the testimony adduced, it is patent that what Boisseau wanted to do was acquire Powell’s property and to give his in exchange for part of the price, and that he intended to pay the commission only in case the proposed transaction could be consummated. He knew that, if this were done through this agent, he would be due it a commission, because that is the usage “generally practiced in affairs of the same nature” of that which formed the subject of the contract entered into. As already stated, his offer was conditioned upon hjs ability to secure a certain loan. It can hardly be said that he intended to pay the
 
 *501
 
 agent $605 if he failed in the attempt, and most assuredly, if he were sane, he did not intend to pay the commissions if the title to either his lots or the property of Powell was defective and could not “in a reasonable time and at reasonable expense be made valid,” in which event the contract would be impossible of fulfillment, or in case the contract should for any reason be annulled “by any court.”
 

 Yet that is precisely what Vallon & Jordano, Inc., would have us construe the words in the contract with reference to the payment of commissions to mean. To do so would be 'to leave out of consideration the manifest intent of one of the parties, and, in the language of the Civil Code (art. 1945), “if there was a difference in this intent, there was no common consent, and consequently no contract.” No sane man would obligate himself to pay a real estate agent a commission for the bare privilege of listing his property for sale or exchange or for the privilege of making an effort to purchase that which belongs to another. Yet that is what this contract, according to the agent’s views, means. It provides that, even though the title prove defective and cannot be perfected, and even though the contract should be null and void for that reason, or if it should be declared null by any court, still the commissions are due.
 

 The contract seems to have been' written mainly in the interest of the real estate agent. Its provisions for the payment of the agent’s commission are snares and traps to catch the ■unwary, and are so drastic, harsh, and out of accord with those usually found in such instruments that no court of justice will enforce them in the absence of proof positive that those who signed the instruments understood and intended to be bound by them.
 

 Furthermore, the contract as between the owner and the agent is wholly inequitable and violates the rule which, in the precise language of the Civil Code, art. 1965:
 

 “Is foiinded in the Christian principle not to do unto others that Which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another.”
 

 In the case of Eastbank Land Co., Inc., v. Hoffstetter, 170 La. 594, 128 So. 527, we had occasion to consider a contract with similar provisions. We there said:
 

 “Indeed the position of the plaintiff seems to be that it was entitled to the commission when its offer was accepted by the defendant though no purchaser was ever secured. In the third paragraph of the petition it is alleged that the commission was earned and payable when the offer to purchase was signed by the plaintiff and accepted by the defendant. j
 

 “No such obligation was incurred by the defendant or contemplated by the parties at the time the offer was made and accepted.
 

 “The commission could only he earned and became due when the offerer obtained a person ready, willing, and able to buy on the terms stated in the offer, and this, as we have seen, was never done.
 

 “It would be strange indeed to say that the defendant owed the plaintiff a commission for making the offer to purchase.”
 

 For the reasons assigned, the judgment appealed from is affirmed, with all costs.
 

 O’NIELL, O. J., absent.