### SPIRO v. CORLISS. *

#### No. 16654.

Court of Appeal of Louisiana. Orleans.

May 17, 1937.

Norman R. Tilden, of New Orleans, for appellant.

Feitel & Parker, of New Orleans (Jno. E. Parker, of New Orleans, of counsel), for appellee.

JANVIER, Judge.

Joseph Spiro, Jr., a licensed real estate agent, charging that Ray A. Corliss has failed and refused to pay him a commission alleged to have been earned for securing a purchaser ready, willing and able to buy a certain piece of real estate owned by Corliss and listed for sale, seeks judgment against Corliss for the amount of the said commission and for an attorney's fee, as provided in the contract of sale which Corliss executed. He charges that the sale was not consummated because of the refusal of defendant to transfer the property and that the purchaser whom he had secured was prepared to take title and to pay for the property in accordance with the contract which had been executed.

*Rehearing denied May 31, 1937.

Corliss admits that Spiro, through one of his salesmen, secured a purchaser for the property and that he accepted the written offer, but he alleges that in the said offer the terms of payment were fixed at $700 cash and the balance of $1,500 on terms of $15 per month, and he charges that "it amounted to a fraud practiced upon your defendant by petitioner herein, as the agreement as written did not represent the intention of the parties." In other words, he charges that Spiro, or his salesman, knowing that he, Corliss, was unwilling to accept such an offer, inserted the said terms in the document and then "fraudulently" obtained his acceptance.

The proof shows that Corliss is an educated man and that he read the document and signed it after reading it. His only excuse is that he "read it very hurriedly." He maintains that a Mr. Jones, the salesman employed by Spiro, was well aware of the fact that he could not accept an offer on the terms stipulated in the written contract for the reason that the said offer provided for a payment of only $700 cash, whereas Jones knew, or Spiro knew, that there was an outstanding mortgage of about $1,000, which would have to be paid before clear title could be given. His counsel argues from this that Spiro, or Jones, the salesman, must have known that it was not his intention to accept such an offer.

But even if knowledge in Jones or in Spiro of the existence of the mortgage for $1,000 can be said to have been shown, that, in itself, could not be pointed to as evidencing fraud, because there is certainly no duty in a real estate agent or in his salesman to refuse to accept an offer for property listed by a client if the said offer does not include sufficient cash to pay the obligations outstanding against the property. The agent may well assume that, if the client accepts the offer, he has other means of retiring the mortgage which already exists. There is no duty in an agent to examine the title of his client's property, or to ascertain whether there are mortgages or other claims against it. Uchello v. Arnold, 16 La.App. 662, 135 So. 81; Mathews Bros. v. Bernius, 169 La. 1069, 1071, 126 So. 556. We find no evidence whatever of fraud.

It is said that the contract is an absurd one from defendant's point of view since it required him to collect the balance due him in monthly payments over a period exceeding ten years. Still, he read the contract and is presumed to have known what it contained. It was not the duty of the real estate agent to advise him that the contract was a foolish one. He should have known that for himself, if, as a matter of fact, it was foolish. Courts cannot protect parties against their own errors of judgment.

In this court, on the day fixed for argument, defendant filed an exception of no right or cause of action. In support thereof his counsel argues that the record shows that, whatever the contract may contain with reference to the terms of purchase, the parties actually agreed that the sale was to be consummated only if the purchaser could obtain a homestead loan for the unpaid portion of the purchase price, and, following this argument, he contends that, since that was the true agreement of the parties, the said agreement included a condition potestative on the part of the obligor, and that, therefore, the said agent did not secure a contract enforceable against the said obligor, citing Titus v. Jackson (Cunningham), 7 La.App. 37; Titus v. Cunningham, 164 La. 431, 114 So. 86.

Assuming that the exception is one which may be filed in this court, La Casse v. New Orleans, T. & M. Ry. Co., 135 La. 129, 64 So. 1012; Brown v. Saul, 4 Mart. (N.S.) 434, 16 Am.Dec. 175; Montfort v. Schmidt, 36 La.Ann. 750; Union Bank v. Dunn, 17 La. 234, and assuming, further, that oral evidence tending to show a contract differing from that set forth in a written document may be considered—and this is a violent assumption—the said evidence does not show any such intention on the part of the parties. All that it shows is that, after the written contract had been executed, Corliss, apparently realizing that he had entered into an unwise agreement, sought permission to substitute, for the loan which he had agreed to himself carry, a loan to be granted by a homestead. The record shows that he suggested to Jones, the salesman of Spiro, that he would like to try to prevail upon a homestead to make the loan, and it further shows that he could not do so, but it does not show that, at any time, it was the understanding of the prospective purchaser that he could only obtain title to the property in the event that he could obtain a homestead loan. Therefore, even assuming that the contention presented by way of exception

in this court may be considered, the evidence does not contain proof of the fact on which that exception is based.

 Furthermore, when we consider the contention of defendant that the true intent of the parties was not evidenced by the written contract, we notice that the defendant has not produced as a witness the prospective purchaser, and there could have been no better witness to testify as to what was his intention when he executed the contract than that purchaser himself. The failure to produce the said witness is explained by defendant's counsel by the statement that it was feared that that testimony would no be favorable. Even without this explanation, we would have been forced to the presumption that such evidence would not be favorable, the said presumption resulting from the failure to produce the witness. Perkins v. Long Bell Lumber Co., 8 La.App. 403; Rossi v. Cust, 17 La.App. 349, 136 So. 103; Toca v. Rojas, 152 La. 317, 93 So. 108.

Counsel for defendant calls attention to the decision of the Supreme Court in Boisseau v. Vallon & Jordano, Inc., 174 La. 492, 141 So. 38, 41, and he argues that there should be no recovery under such a contract as this for the reason that the Supreme Court held in that case that the contract there involved was most unfairly favorable to the real estate agent. But that contract provided that the agent should be entitled to his commission no matter what might be the cause of the failure of consummation of the sale transaction. The court said that, whatever may have been the actual terms of that contract, in fairness it should be interpreted as evidencing the intention of the prospective vendor "to pay the commission only in case the proposed transaction could be consummated." See, also, Spiro v. Corpora, 174 So. 145, Court of Appeal Parish of Orleans, decided May 3, 1937.

 In the case before us it is quite evident that the transaction could have been and would have been consummated except for the refusal of the proposed vendor himself to comply with his agreement. He cannot point to his own failure to consummate the transaction as justification for his refusal to pay the commission.

 Counsel for defendant relies, also, upon the decision of this court in Lawrence v. Mt. Zion Baptist Church, 1 La.App. 404, in which we held that a mistake as to the

identity of the real estate involved justified refusal to take title. We do not think that that is the question which is in any way involved here. The mistake here—if it was a mistake—was solely a mistake in the mind of the prospective vendor as to the terms he intended to grant, and such a mistake will not justify his refusal to comply with his contract.

 In the court below there was judgment in favor of plaintiff for the amount of the commission, to wit, $88, and for an attorney's fee which the court fixed at $20.00, the total judgment being for $108. We think the fee of $20.00, as fixed, is not unreasonable.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed, at the cost of appellant.

Affirmed.

WESTERFIELD, J., absent, takes no part.