Defendant desired to sell his residence in the City of Shreveport, Louisiana, and posted a "For Sale" sign thereon which being observed by plaintiff, a realtor in said city, doing business under the trade name of McKelvy Realty Company, prompted her to contact him with the view of inducing him to list the property for sale with her. He did so and very soon thereafter she contacted Mr. W. R. Wyatt, also a resident of said city, who wished to purchase a home, and his interest in the property was immediately aroused. He and his wife inspected the place and informed plaintiff that they were willing to purchase it but had only $1,500 in war bonds to apply on the price. As defendant exacted all cash for his property, plaintiff suggested to Wyatt that he take the necessary steps to procure a commitment from the Federal Housing Administration for a loan of $6,800 to be secured by a mortgage on the place. It was thought that with the proceeds of such a loan the sale of the property could be consummated. Wyatt promptly made the suggested application.
About the time this was done plaintiff had Wyatt sign what is referred to as an agreement to purchase the property, the consideration as expressed therein being: "$8,500.00. Terms FHA Loan Balance Cash," and he delivered to her his check for $500 which is described in said instrument as earnest money. This amount, it is also declared, was to be applied on the price of the sale should it be consummated. Thereafter, at plaintiff's instance, defendant signed said agreement and at that time she endorsed and delivered to him said check.
In due time the FHA was heard from. That agency was willing to approve a loan of only $5,200 on the property. As Wyatt was unable to acquire additional cash to close the trade, he notified all concerned that he would make no further effort to acquire the property. He abandoned negotiations entirely.
The referred to agreement was also signed by plaintiff. It is on a printed form used by her and contains this singular provision: "and it is agreed by the parties to this contract that the commission of the McKelvy Realty Company is earned upon the signing of this contract by both parties to it, and may be deducted from the money herein receipted for."
Plaintiff predicates her action upon this quoted part of the agreement. She sues for $425, being five per cent (5%) of the price named in the agreement. She does not contend that she earned the commission by procuring a customer who was ready, willing and able to close the sale on the terms exacted by defendant. *Page 371 
Defendant denies that plaintiff is due or entitled to recover any amount from him on commission account. He alleges that after it was learned that Wyatt was financially unable to carry out his part of the agreement, he and Wyatt, by mutual agreement, canceled the contract between them in toto.
Plaintiff's demand was rejected and she appealed to this court. The lower court gave written reasons for its judgment.
It goes without saying that if, under the contract, plaintiff was vested with the right she asserts herein, the other signatories to the contract were without power by their own voluntary act to divest her of such right. But, we do not think the right asserted by plaintiff herein devolved upon her simply from the signing of the agreement. If this were not true, it can easily be seen that the door to the practice of fraud, deception and imposition would be open wide. The realtor could pick up a financially irresponsible person and have him represent himself to be a serious prospect, and when the agreement (such as we have here) was signed, the realtor could then turn to the owner and demand of him the payment of a commission. This would, of course, lead to absurd consequences. No person, even of average intelligence and business experience, would knowingly commit himself to such an obligation.
It is the law, well known and recognized by all persons engaged in the buying and selling of real estate, that a broker earns the right to claim a commission from the seller only after he has acquired a customer who is ready, willing and financially able to buy on the terms specified or agreed to by the owner.
Clearly, the agreement between the parties was not susceptible of specific performance. It begins as a receipt for the amount paid down, and contains several provisions concerning the prospective sale and purchase of the property, but therein defendant did not obligate himself to sell the property to Wyatt nor did Wyatt obligate himself to buy it and pay the stipulated price. The best that may be said of the instrument is that it is a sort of offer to buy accompanied by the giving of earnest money and either party had the unquestioned right to recede therefrom by incurring the penalty provided by law in such cases. Article No. 2463 of Civil Code.
We are of the opinion that this case could easily be disposed of by simply holding that, as the record clearly warrants, defendant did not agree to pay plaintiff a commission for effecting a sale. He first asked $8,500 for his property, but did finally agree to take $8,100 net for it and informed plaintiff that she might add compensation for her services thereto. She did so to the extent of $400. The record bristles with testimony, to the admissibility of which no objection was made, that establishes these facts. Had a sale been closed for $8,100, no commission would have been due plaintiff and since no sale at all was closed a fortiori no commission is due her. We prefer, however, to predicate judgment upon other grounds.
The quoted excerpt from the agreement is unconscionable. In addition, plaintiff's own conduct subsequent to the signing of the agreement clearly reflects a consciousness on her part that she had not to that time earned the right to demand a commission from plaintiff. Especially is this attitude disclosed in two different ways, to-wit:
(1) After the agreement was signed she made some efforts to bolster Wyatt's financial condition so that the commitment of the FHA could be availed of and the sale closed; and
(2) She voluntarily endorsed and handed over to defendant the check representing the earnest money without exacting any commitment from him with respect to returning part of it to her on commission account.
The courts of this state in the few cases that have reached them, wherein a provision of a contract of the character herein discussed, so unfairly favorable to the realtor, was involved, have uniformly refused to enforce the same, and in so doing based decisions upon the legal as well as equitable principle, that no commission was due the realtor by the owner unless he produced a customer ready, willing and able to buy on terms acceptable to the owner.
The question here tendered, under contracts carrying the same or substantially *Page 372 
the same provisions as that relied upon by the plaintiff herein, was discussed and adjudicated in the following cases, to-wit: Eastbank Land Company, Inc., v. Hoffstetter,170 La. 594, 128 So. 527; Boisseau v. Vallon Jordano, Inc., et al.,174 La. 492, 141 So. 38; Leaman v. Rauschkolb, La. App.,1 So.2d 338.
In the Eastbank Land Company case, the plaintiff was a realtor and on behalf of a client submitted an offer to purchase the property defendant had authorized it to sell, and he accepted the offer. The trade fell through from no fault of the defendant, the owner. The broker then sued him for a commission. In rejecting the demand, the court said:
"Indeed the position of the plaintiff seems to be that it was entitled to the commission when its offer was accepted by the defendant though no purchaser was ever secured. In the third paragraph of the petition it is alleged that the commission was earned and payable when the offer to purchase was signed by the plaintiff and accepted by the defendant.
"No such obligation was incurred by the defendant or contemplated by the parties at the time the offer was made and accepted.
"The commission could only be earned and became due when the offerer obtained a person ready, willing, and able to buy on the terms stated in the offer, and this, as we have seen, was never done.
"It would be strange indeed to say that the defendant owed the plaintiff a commission for making the offer to purchase."
In the Boisseau case in the offer to purchase that was accepted by the owner, there was incorporated a definite commitment on his part as regards payment of the commission. It reads [174 La. 492, 141 So. 40]:
"I agree to pay Vallon Jordano, Inc., agent, the commission of 5% on purchase price, which is earned upon the acceptance of this offer."
This stipulation appeared several times in the offer. Justice Odom, organ of the Court, at length discusses the question and quotes several articles of the Civil Code to support the reasoning advanced against the enforcement of the quoted agreement. We quote in part what he had to say, to-wit:
"Counsel for Vallon Jordano, Inc., realtors, say that contracts not prohibited by law constitute the law between the parties and are enforceable against them, even though they were unwise in making the agreements, and that 'courts do not sit to relieve persons of the results of their bad judgment.'
"That is true enough, but courts do sit to interpret instruments evidencing obligations. A contract or obligation 'must not be confounded with the instrument in writing by which it is witnessed. The contract may subsist, although the written act may, for some defect, be declared void; and the written act may be good and authentic, although the contract it witnesses be illegal. The contract itself is only void for some cause or defect determined by law.' C.C. art. 1762.
"When courts are called upon to interpret written instruments purporting to evidence obligations, if any doubt arises, they look beyond the mere wording of the instrument itself and endeavor to ascertain what was the true intent of the parties, for it is the intent of the parties which determines whether an obligation was assumed.
"The Civil Code, under the heading 'Of the Interpretation of Agreements,' beginning with article 1945, prescribes the general rules for the interpretation of agreements. In article 1945 it is provided:
" 'That courts are bound to give legal effect to all such contracts according to the true intent of all the parties,' and:
" 'That the intent is to be determined by the words of the contract, when these are clear and explicit, and lead to no absurd consequence.
" 'That it is the common intent of the parties, that is, the intention of all, that is to be sought for; if there was a difference in this intent, there was no common consent, and consequently no contract.'
"Article 1950 reads as follows:
" 'When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, *Page 373 
rather than to adhere to the literal sense of the terms.'
* * * * * *
"The contract seems to have been written mainly in the interest of the real estate agent. Its provisions for the payment of the agent's commission are snares and traps to catch the unwary, and are so drastic, harsh, and out of accord with those usually found in such instruments that no court of justice will enforce them in the absence of proof positive that those who signed the instruments understood and intended to be bound by them.
"Furthermore, the contract as between the owner and the agent is wholly inequitable and violates the rule which, in the precise language of the Civil Code, art. 1965:
" 'Is founded in the Christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another.' "
The Leaman case, supra, was decided by the Orleans Court of Appeal. It follows the two Supreme Court cases from which we have quoted.
Plaintiff's industrious counsel argues that the agreement in question meets all the requirements of Article 1779 of the Civil Code relative to the confection of a valid agreement, to-wit: Parties legally capable of contracting; their consent legally given; a certain object which forms the matter of their agreement; and a lawful purpose. He also cites and quotes many articles of the Civil Code dealing with the confection of contracts and which amplify the requirements in said Article 1779. No useful purpose would be promoted by discussing and pointing out wherein these articles are not controlling of the issue tendered herein. All of said articles contain sound law, and under facts and circumstances different from those in the case at bar, would be safe to follow. The question here tendered has been positively answered by the Supreme Court in the two decisions from which we have quoted. No words of ours would improve upon what was said therein.
Plaintiff also cites and quotes from the following cases, which he contends support his position herein, to-wit: Maloney et al. v. Aschaffenburg et al., 143 La. 509, 78 So. 761; Spiro v. Corliss, La. App., 174 So. 285; Blache v. Goodier, La. App.,22 So.2d 82.
There may appear in these cases statements from which plaintiff derives some comfort but the exact point at issue in each is not the same as that in the present case and for this reason they should not be accorded any influence in determining the issue herein. And, in addition, the Supreme Court has settled this question in no uncertain language.
For the reasons herein given, the judgment from which appealed is affirmed with costs.