339 So.2d 748 (1976)
Mrs. Joseph WILLIAMS
v.
Norma S. BEL and Rene Brunet, Jr.
Nos. 57943, 58010.
Supreme Court of Louisiana.
November 8, 1976.
Rehearing Denied December 10, 1976.
*749 Joseph S. Russo, Jefferson, for defendant-applicant in No. 57943 and for defendant-respondent in No. 58010.
Arthur C. Reuter, Jr., Reuter & Reuter, New Orleans, for plaintiff-applicant in No. 58010 and for plaintiff-respondent in No. 57943.
DENNIS, Justice.
The issue presented for our review is whether a realtor is entitled to recover a commission and reasonable attorney's fees under an agreement to sell immovable property despite the fact that the sale was thwarted by the partial destruction of the property in Hurricane Betsy.
On July 21, 1965, Mrs. Joseph H. Bel signed a printed agreement to purchase or sell prepared by her real estate agent, Rene Brunet, Inc., offering and agreeing to sell property at 1538 Schnell Drive, Arabi, Louisiana, for the sum of $16,900, containing, among others, the following terms and conditions:
"This sale is conditioned upon the ability of purchaser to borrow upon this property as security the sum of $13,400.00 by a mortgage loan or loans at a rate of interest not to exceed 6% per annum, interest and principal payable on or before 25 years * * *
"* * *
"Should purchaser, seller or agent be unable to obtain the loan stipulated above within 30 days from acceptance hereof, this contract shall then become null and void and the agent is hereby authorized to return the purchaser's deposit in full. Commitment by lender to make loan subject to approval of title shall constitute obtaining of loan.
"* * *
"If this offer is accepted, seller agrees to pay the agent's commission of 6% which commission is earned by agent when this agreement is signed by both parties and when the mortgage loan, if any, has been secured.
"Either party hereto who fails, for any reason whatsoever, to comply with the terms of this offer, if accepted, is obligated and agrees to pay the agent's commission and all reasonable attorney's fees and costs incurred by the other party, and/or agent in enforcing their respective rights."
On the same date Doris Croal Williams, acting as agent for her husband, Joseph J. Williams, Jr., signed the instrument accepting the offer as purchaser and James Schmidt signed the document for the realtor.
On July 23, 1965, Mrs. Williams and Mrs. Bel signed the following agreement:
"We the undersigned have mutually agreed to change the financing in the agreement dated July 21, 1965 and accepted on that same date covering the sale of 1538 Snell Drive, New Orleans, La.
"The financing clause is changed to read `purchaser will assume vendors existing VA loan with a balance of approximately $11,302.88 carrying an interest rate of 4½%.' Purchaser agrees to raise cash down payment from $3,500.00 to approximately $5,597.12.
"All other terms and conditions of this contract to remain the same and unchanged."
Mrs. Bel appeared at the notary's office for purposes of completing the sale on the original date scheduled, but because some necessary papers had not arrived from New York the closing was reset for September 10. On September 9, however, the property was heavily damaged after being inundated by the flood waters resulting from Hurricane Betsy. The record is devoid of evidence as to whether any of the parties went to the notary's office on September 10. Mrs. Williams testified she inspected the property in November and informed Mrs. Bel at that time she would not purchase it because of the damage it had sustained.
*750 There is no evidence Mrs. Bel did anything to prevent the sale.
The history of the litigation was outlined by the court of appeal as follows:
"This litigation was initiated by the prospective buyer, Mrs. Joseph Williams, who [in her capacity as agent for Joseph J. Williams, Jr.] filed suit against the seller, Mrs. Norma S. Bel, for $2,380 for breaching the agreement to sell by failing to restore the property after Hurricane Betsy. Also joined as a defendant was Rene Brunet, Inc., for the return of the $1,690 deposit made by plaintiff when she signed the contract to buy. The realtor filed reconventional and third party demands, claiming a commission of $1,014 together with reasonable attorney fees from the seller under the written contract, or alternatively, from the buyer in the event it was concluded the purchaser had breached the agreement.
"From a judgment (1) ordering the realtor to return to plaintiff her $1,690 deposit with legal interest from date of judgment, and (2) dismissing Brunet's claim for commission and reasonable attorney fees, the realtor has appealed." (Footnotes omitted.)
The trial court dismissed the claims between the buyer and seller, but neither appealed.
The court of appeal reversed the decision of the lower court in part, finding that the seller Bel was obligated to pay Brunet's commission, attorney's fees and costs under the express terms of the contract; however, through an apparent oversight, the court neglected to award attorney's fees and costs in its decree. Both Bel and Brunet sought and were granted writs, the one contesting the result and the other seeking additional relief. For the reasons hereinafter assigned we reverse and reinstate the judgment of the trial court.
Bel did nothing which caused the sale to be aborted. However, the court of appeal found that Williams "obtained the necessary financing" and held Bel liable to pay the 6% realtor's commission which the contract declared to be "earned by agent when this agreement is signed by both parties and when the mortgage loan, if any, has been secured."
Under the terms of the agreement, the buyer could only have been held liable for the agent's commission had she failed to comply with the terms of the offer. Both lower courts properly concluded that she did not breach the contract since she was given by law the option to withdraw when the property was partially destroyed. La. Civil Code article 2455 provides:
"If, at the moment of the sale, the thing sold is totally destroyed, the sale is null; if there is only a part of the thing destroyed, the purchaser has the choice, either to abandon the sale, or to retain the preserved part, by having the price thereof determined by appraisement."
When Williams exercised her legal option to abandon the sale, she was relieved of any obligation under the agreement to purchase and was entitled to have her deposit returned.
However, Williams' legitimate withdrawal did not, under the wording of the contract, exonerate Bel from paying the commission. She contracted to compensate the realtor when the agreement was signed and a loan was secured. Furthermore, the contract stated that a commitment by a lender to make a loan subject to approval of title would constitute obtaining of a loan. Since Bel committed herself to allow Williams to finance the sale by assuming the existing VA loan, we conclude that the court of appeal correctly held the two suspensive conditions had been fulfilled.
Nevertheless, we do not believe that the parties contemplated the seller would be held liable for the realtor's commission in an instance in which the sale was thwarted through no fault of her own.
The La.Civil Code, articles 1945, et seq., provides rules to guide us in the interpretation of agreements. Pertinently, it provides that the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences; it is the common intent of *751 the partiesthat is, the intention of all that is sought for [article 1945]; and when there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms [article 1950]; when the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation [article 1956]; but if the doubt or obscurity arise from the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee [article 1958].
In our opinion, to require, under the facts of this case, that the seller pay the realtor's commission would produce an "absurd consequence" and one which was contrary to the common intent of the parties.
As we construe the contract which was drafted by the realty company to its advantage, it was intended to insure that the parties would not mutually agree to cancel the sale, to the prejudice of the realtor's commission, and that if either party breached the agreement, he would be responsible for the agent's commission. Such provisions in sale-purchase agreements are both common and enforceable. See, Eanes v. McKnight, 262 La. 915, 265 So.2d 220 (1972); Miller v. Riley, 152 So.2d 852 (La. App.4th Cir. 1963); 12 C.J.S. Brokers §§ 87 and 95.
We have rejected realtors' claims for commissions on prior occasions when the contractual language upon which their claims were based was found not to reflect the common intent of the parties. In Boisseau v. Vallon & Jordano, Inc., 174 La. 492, 141 So. 38 (1932), the plaintiff offered to purchase property in exchange for two lots owned by him and $12,000, and agreed to pay the agent's commission if the offer were accepted. The offer to purchase was conditioned upon his securing a $9,500 loan, but the agreement to pay the agent's fee was not. After the offer had been accepted, the plaintiff's bona fide efforts to obtain financing proved unsuccessful and the sale was never consummated. The agent demanded compensation under the terms of the contract which stated that the commission was "earned upon the acceptance of this offer." The court dismissed his claim, finding that the plaintiff did not intend to remunerate the agent if attempts to secure a loan failed, that the provisions of the contract in favor of the agent's commission were inequitable, and that to enforce them would lead to an "absurd consequence." This Court applied the same rationale in a later case where after an agreement to sell property had been signed, the seller's wife prevented the sale by filing a declaration of family home. Guy L. Deano, Inc. v. Michel, 191 La. 233, 185 So. 9 (1938). The agreement had provided relative to the agent's commission: "I [seller] * * * agree to pay the commission of Guy L. Deano, Inc., the amount of Three Hundred and Forty Dollars ($340.00), which is earned upon acceptance of this offer, irrespective of validity of the title." The court held that the seller's failure to complete the sale was not due to any defect in the title, but was due to a condition arising subsequently which made it impossible for him to comply with this agreement. It further concluded that the seller, when he listed his property for sale, did not intend to pay the commission if his wife subsequently, without his knowledge and consent, recorded the declaration of family home, making the contract of sale impossible of fulfillment. The Court found that La.Civil Code article 1945, as interpreted by Boisseau, supra, relieved it of the obligation of enforcing the written contract when to do so would lead to an absurd consequence.
Clearly, none of the parties to the agreement contemplated the partial destruction of the property by a hurricane, and judging from the contract as a whole, the contract was neither drafted nor signed with regard for this remote eventuality. Any doubt as to whether the broad language of the agreement governed the unusual circumstances *752 of this case must be resolved against the realtor who drafted the contract and in so doing, failed to specify its application to this improbable contingency. La.C.C. art. 1958. The manner in which the parties executed the agreement furnishes further insight as to their intent. Brunet, the broker, did not demand his commission on July 23, 1965 when the purchaser obtained a promise of a loan. Instead, the record indicates he intended to await the completion of the loan transaction, as well as the sale, before collecting his fee. La.C.C. art. 1956.
For the foregoing reasons, the decision of the court of appeal is reversed and the judgment of the trial court is reinstated.
DIXON, J., dissents.