917 So.2d 448 (2005)
MEAGHAN FRANCES HARDCASTLE TRUST
v.
FLEUR DE PARIS, LTD.
No. 2004-CA-1371.
Court of Appeal of Louisiana, Fourth Circuit.
June 29, 2005.
*449 Michael W. Tifft, Halpern, Danner, Miles & Martin, L.L.C., Metairie, LA, for Plaintiff/Appellant.
William F. Wessel, Wessel & Associates, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., and Judge LEON A. CANNIZZARO, JR.).
DENNIS R. BAGNERIS, SR., Judge.
The Appellant, the Meaghan Frances Hardcastle Trust, appeals the judgment of the district court in favor of the Appellee, Fleur de Paris, Ltd., denying the Appellant's Rule for Eviction. We affirm.

Facts
On February 1, 1995, Joseph Parrino, on behalf of Fleur de Paris, entered into a lease with Gwen Burke Smalley, Jean H. Burk and the Gwendolyn Burk Smalley Trust for 60 months beginning April 1, 1995.[1] On August 11, 1999, Joseph Parrino, again on behalf of Fleur de Paris, signed a "Renewal and Extension of Lease" only signed by Gwendolyn Burk Smalley. In anticipation of the sale of the property, the original lease and the renewal were recorded in the Orleans Parish Conveyance Office. The property was sold to the Appellant, the Meaghan Frances Hardcastle Trust, on August 30, 2002.
The New Orleans Fire Department, Fire Prevention Division, inspected the property and noticed the Appellant of different violations on more than one occasion (discussed infra). It is alleged by Fleur de Paris that the Appellant contacted the fire department in an effort to use the violations to force Fleur de Paris out of the premises. In August 2003, the Appellant sent out a five-day notice to vacate for failure to pay July rent and failure to correct the deficiencies under the City Codes. The Appellant further asserted that the lease was invalid and unenforceable because the renewal was not signed by *450 all of the original lessors, namely the Gwendolyn Burk Smalley Trust.

Procedural History
The Appellant filed a Rule for Eviction with a request for declaratory judgment. Fleur de Paris filed a Dilatory Exception of Unauthorized use of Summary Proceeding. The Appellant amended its Rule for Eviction and filed two continuances with the district court. The matter was heard on January 9, 2004, and judgment in favor of Fleur de Paris was signed on February 4, 2004[2]. This timely appeal follows.

Assignments of Error # 1 and # 2
In its first assignment of error, the Appellant argues that the district court erred in giving effect to the alleged renewal of the lease in absence of its execution by all parties to the original lease in the form and manner contemplated by the parties. It argues that three signatories representing two co-owners, a partnership and a trust, signed the original lease. The Appellant specifically points to provision numbers 28 and 41 in the original lease. Section 28, entitled "Notices," reads in pertinent part:
Any notice or other communication required or permitted to be given under this lease by Lessee to Lessor shall be in writing and shall be delivered in person or sent by United States Certified or Registered mail, postage prepaid, return receipt requested, and addressed to Lessor at the place where rent is required to be paid hereunder.
Section 41, entitled "Entire Agreement," reads in pertinent part:
... Except as may otherwise be provided herein, no subsequent alteration, amendment, change or addition to this lease shall be binding upon the parties hereto unless reduced to writing and signed by them.
Our colleagues reasoned in Enterprise Property Grocery, Inc. v. Selma, Inc., 38,747, pp. 7-8 (La.App. 2 Cir. 9/22/04), 882 So.2d 652, 656, that "[t]he record shows that defendant paid rental payments of $2,000 from November 2002 through July 2003 consistent with the new lease provisions. Plaintiff accepted those rental payments during that time period with an awareness of defendant's expectation of a lease with a term. Thus, any presumption that the parties needed to sign the lease to be bound was rebutted by their subsequent performance. Based upon this record, we find that there was agreement between plaintiff and defendant with respect to the terms of the written lease as of November 1, 2002, and the trial court was clearly wrong in finding that the lease was had no effect without the plaintiff's signature."
We find it only rational that we address the first two issues together. Appellant asserts in its second assignment of error that the district court erred in determining that the parties ratified the purported renewal absent any evidence in the record to support a finding of ratification.
Confirmation of a contract, as referred to in Article 2031[3] ... involves making the contract valid by formal assent. *451 That assent can be evidenced through the typical actions signifying ratification of a defective contract.... While no clear definition exists in the statutes or case law as to what confirmation acts validate a relatively null contract, jurisprudence makes it clear that acts sufficient to ratify a contract will act as confirmation of the contract. Confirmation and ratification are used almost interchangeably, or as non-exclusive actions. When a contract is ratified through the subsequent actions of the parties, that contract is confirmed by that ratification. See Hamilton v. McKee, 371 So.2d 1115 (La.1979); Ponder v. Pechon, 274 So.2d 386 (La.1973); Placid Oil Co. v. Taylor, 291 So.2d 892, writ granted 294 So.2d 832 (La.1974).
Rowan v. Town of Arnaudville, XXXX-XXXX, pp. 6-7 (La.App. 3 Cir. 12/11/02), 832 So.2d 1185, 1190. (footnote added).
The record reveals that the Appellant purchased the premises in question subject to the written recordation of the lease by Fleur de Paris. The Appellant not only continued to receive rent payments, but also called for an additional amount of rent due to the cost of living. While the district court established that the extension of the lease "appears to have deficiencies on its face," this Court agrees with the district court's finding that "the subsequent actions of both the lessor and the lessee, that is, and its successors, that is the original lessor on the property was the [sic] of the Gwendolyn Burk Smalley Trust and its later successor Meaghan Frances Hardcastle Trust. The parties have ratified it by the acceptance of rent payments with regard to the lease."
When appellate review is not premised upon any factual findings made at the trial level, but instead is based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is simply whether the trial court was legally correct. Spohrer v. Spohrer, 610 So.2d 849 (La. App. 1 Cir.1992); Koeniger v. Newsome, XXXX-XXXX (La.App. 4 Cir. 2/4/04), 873 So.2d 652.
Despite the Appellant's assertion that in February and March of 2003, it refused to accept rent, the evidence adduced at trial did not support the factual finding in accordance with Koeniger. Even though Appellant questions the validity of the "Renewal and Extension of Lease" we cannot conclude that the district court was legally incorrect in finding that the Appellant ratified the lease by accepting rental payments from Fleur de Paris and failed to meet its burden to prove otherwise at trial.

Assignment of Error # 3
In its third assignment of error, the Appellant maintains that the district court erred in determining that the legal effect of any ratification was a new term, rather than a month-to-month reconduction. The Appellant argues that if this Court finds that there was a ratification of the lease, then the Appellant had the right to terminate the lease anytime upon adequate notice.
Fleur de Paris asserts that the "Renewal and Extension of Lease" added the third floor commercial space and changed the rent structure for both the first and third floors. It argues that in accordance with Waller Oil Co. v. Brown, 528 So.2d 584 (La.App. 2 Cir.1988) reconduction does not apply when the parties' stated intention is to consent to a new lease.
Our colleagues in the Third Circuit stated:
In Misse v. Dronet, 493 So.2d 271, 273-74 (La.App. 3 Cir.1986) (citations omitted), we stated:
To have a tacit reconduction in Louisiana it is necessary that the lease has *452 expired, that the lessee remain in possession for more than a week, that the lessor consent to his remaining in possession of the premises or not have given him notice to vacate. The reconducted lease is actually a continuation of the original lease in all respects except that the fixed terms or period of duration under the old lease is voided and the reconducted lease is considered to be by the month.
We further stated that when, by agreement, the rental amount is changed, a new rental amount and a new consent is created. Id. Thus, the old lease terminated and a new one was created in its stead (sic).
Kite v. Carter, 2003-378, pp. 3, 4 (La.App. 3 Cir. 10/1/03), 856 So.2d 1271, 1273-74. In Kite the court noted that the rent amount changed from $140 to $200 per month and the trial court was incorrect in holding that the terms and conditions in the original lease continued in the reconducted lease. The court concluded that a new lease was created and all of the terms of the original lease ceased.
LSA-C.C. art. 2721 provides:
A lease with a fixed term is reconducted if, after the expiration of the term, and without notice to vacate or terminate or other opposition by the lessor or the lessee, the lessee remains in possession:
(1) For thirty days in the case of an agricultural lease;
(2) For one week in the case of other leases with a fixed term that is longer than a week; or
(3) For one day in the case of a lease with a fixed term that is equal to or shorter than a week.
LSA-C.C. art. 2725 provides:
If the lease contract contains an option to extend the term and the option is exercised, the lease continues for the term and under the other provisions stipulated in the option.
In Latter & Blum, Inc. v. Obolensky, 288 So.2d 370 (La.App. 4 Cir.1974), the case involved an agreement that was a new contract, and not merely renewal of lease. The parties recognized that there would be a change from the premises being used as an apartment house to an office structure. In addition, the rent was raised, an additional ten-year option was extended to the lessee, and the lessee was given right of first refusal to purchase the premises. Further, the lessee assumed the responsibility for structural integrity of certain portions of the building and the obligations of the lessee to restore the premises on termination were vastly changed. There was also a new provision regarding the mutual obligations of the parties in the event of a casualty loss to the building causing the parties to settle pending lawsuits against each other.
We find that the "Renewal and Extension of Lease" constitutes an extension under LSA-C.C. art. 2725 and that the parties displayed behavior in which they did not intend to enter into a month-to-month contract. "Although a presumption exists that a lease is reconducted on a month to month basis if the lessee remains in possession beyond the term of the lease, the jurisprudence has unequivocally held that the presumption of reconduction is inoperative in the face of the clear intention of the parties to the contrary." Crawley v. Coastal Bridge Co., Inc., XXXX-XXXX (La.App. 5 Cir. 4/27/04), 871 So.2d 1271, 1273. In Waller Oil Co., Inc. v. Brown, 528 So.2d 584 (La.App. 2 Cir.1988), the court noted, "[w]e have closely examined the evidence in this case. It is abundantly clear that the parties were not `silent and inactive,' such as would activate the presumption of reconduction. Id. at 586.
Further, in the instant case, the original contract leases the "Ground floor commercial location bearing municipal address: 712 Royal Street, New Orleans, Louisiana *453 70116." The "Renewal and Extension of Lease" clearly states that the lease (referencing the original lease) has been "amended and extended" and will cover the ground floor and the third floor.
Louisiana Civ.Code art. 2045 guides us in determining the intent of the parties to a contract. Article 2045 mandates that "[i]nterpretation of a contract is the determination of the common intent of the parties." Furthermore, under La. Civ.Code art. 2046, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation need be made into the parties' intent." Additionally, under La. Civ.Code art. 1971, parties are free to contract for any object that is lawful, possible, and determined or determinable. Lastly, this court has concluded that the interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695 (La.6/29/01), 808 So.2d 294.
Abshire v. Vermilion Parish School Board, 2002-2881, p. 5 (La.6/27/03), 848 So.2d 552, 555.
However, when there is anything doubtful in a contractual agreement, a court must endeavor to ascertain the common intention of the parties, rather than adhere to the literal sense of the terms. Boisseau v. Vallon & Jordano, 1932, 174 La. 492, 141 So. 38. Meaning and intent of parties to a written instrument is ordinarily determined from instrument's four corners and extrinsic evidence is inadmissible either to explain or to contradict instrument's terms. Ortego v. State, Dept. of Transp. and Dev., 96-1322 (La.2/25/97), 689 So.2d 1358.
Id. n. 5
We find that Fleur de Paris entered into a contract to extend its lease of the premises now owned by the Appellant. The face of the document and the actions of the parties clearly set forth the intent. In an attempt to evict Fleur de Paris the Appellant fails to provide this Court with a legal argument that reconduction took place upon the signing of the "Renewal and Extension Lease." This assignment of error is without merit.

Assignment of Error # 4
In its last assignment of error, the Appellant maintains that the district court erred in determining that no breach of the lease occurred given Fleur de Paris' responsibility for compliance with municipal codes and Fleur de Paris' sufferance of code violations. The Appellant argues that there were multiple violations of the Code of Ordinances of the City of New Orleans, the Building Code of the City of New Orleans, the Comprehensive Zoning Ordinance of the City of New Orleans and the Rules and Regulations of the Vieux Carre Commission.
These violations, to name a few, included plywood on a window as temporary protection against vandalism; failure to provide an approved metal locker for storage of flammable paint; failure to have the requisite number of emergency exits and converting a residential unit to commercial use.
Fleur de Paris counters the argument of the Appellant by asserting that it was the Appellant who reported the violations in an effort to evict them.
Our review of this issue is manifest error. At trial, Fleur de Paris offered evidence that the alleged breaches were a direct result of something the previous owner did that was never an issue with the Vieux Carre Commission until notified by the Appellant. Further, Fleur de Paris established that a previous tenant left *454 flammable paint on the premises and that the Appellant removed the stairwell causing a fire hazard. The record reveals, as the district court concluded, the Appellant offered no documentary evidence to contradict that of Fleur de Paris. Further, the Department of Health Administrative Adjudication Division who was investigating "failure to secure permits to convert commercial or convert back to residence" was dismissed with no explanation. This is a tactic by the Appellant to remove Fleur de Paris from the premises and we find that this assignment of error is without merit.

Decree
For the reasons stated herein, we affirm the judgment of the district court because we cannot conclude that the district court was erroneous in finding that the Appellant failed to demonstrate by the preponderance of the evidence that the "Renewal and Extension of Lease" is invalid or that Fleur de Paris breached the lease through code violations.
AFFIRMED.
NOTES
[1] The Appellees have leased the premises since 1980; however the above described lease is the lease in question.
[2] There was also a Notice to Vacate dated October 7, 2003 that the Appellant chose not to proceed with. Thereafter, new notices were sent to Fleur de Paris.
[3] A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed.

Relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative. LSA-C.C. Art. 2031