848 So.2d 552 (2003)
Lana Marie Dailey ABSHIRE, et al.
v.
VERMILION PARISH SCHOOL BOARD.
No. 2002-C-2881.
Supreme Court of Louisiana.
June 27, 2003.
Silas B. Cooper, Jr., Abbeville, Richard P. Ieyoub, Attorney General, Isaac Jackson, Jr., Gonzales, Counsel for Applicant.
James L. Brazee, Jr., Lee A. Gallaspy, Brazee & Cormier, Lafayette, Counsel for Respondent.
TRAYLOR, Justice.
In this dispute over ownership of immovable property, defendants, Vermilion Parish School Board (School Board) and the State of Louisiana, appeal the judgment of the trial court which found that *553 the School Board had executed a sale of a strip of land, rather than a canal servitude, to the United Irrigation and Rice Milling Company (United Irrigation) for canal purposes in 1910. The court of appeal affirmed the trial court. 02-620 (La.App. 3 Cir. 10/30/02), 829 So.2d 1209. We granted the defendants' writ to determine whether a sale of full ownership of the strip occurred where the School Board president, who was expressly authorized to sign an act of donation of a "right of way" by the School Board minutes annexed to and, therefore, part of the contract, signed instead a cash deed. For the forgoing reasons, we reverse the trial court and court of appeal and find that the transfer in 1910 was limited to a servitude, rather than full ownership of the land in question.

FACTS AND PROCEDURAL HISTORY
On February 6, 1909, the Vermillion Parish School Board passed a resolution, authorizing its president, M.L. Eldredge, to sign an act of donation conveying a "right of way" to United Irrigation for the purposes of building a canal on the instant contested property located in Kaplan, Louisiana, and designated "Section 16, Township 12 South of Range 2 East" (16 T. 12 S.R. 2 E.). The minutes from the School Board meeting of that date reflect:[1]
Right of Way Canal
On motion of Mr. Perry duly seconded this Board hereby donates a right of way of a uniform width of 200 feet along the north side of Section 16, T. 12 S.R. 2 E., to the United Irrigation and Rice Milling Company, and the President is hereby authorized to sign [an] act of donation on the part of this Board. (emphasis added)
However, on February 2, 1910, Eldredge appeared before a notary public and signed a "Cash Deed" form. The cash deed declared that Eldredge agreed to "Grant, Bargain, Sell, Convey, Transfer, Assign, Set Over and Deliver" the now contested land to United Irrigation to build a canal for the consideration of $1.00 and "the further consideration of the benefits and advantages to accrue to this and adjoining lands by reason of the construction, operation and maintenance of an irrigating Canal on the strip of land herein sold." The cash deed further guaranteed "successors or assigns forever, with full and general warranty of title...." The instrument made specific reference to the *554 February 6, 1909, minute entry which authorized Eldredge to donate a "right of way" and a certified copy of the minutes were annexed to the contract.[2]
In 1910, United Irrigation built a rice irrigation canal on the land. The canal remained in operation under the control of United Irrigation and then several successors until 1980.[3] Thereafter, the land passed through several more companies and then portions of the contested strip were sold by another company, AVICO, United Irrigation's then successor in title, to the existing landowners or their predecessors in title.
In April of 2000, the Vermillion Parish School Board advised the plaintiffs that the land in dispute was owned by the School Board. Rather than displacing the plaintiffs from the land, the School Board provided them the option to lease the property for an annual sum.
On or about September 12, 2000, the plaintiffs filed a petition for declaratory judgment seeking a judicial determination that they were the owners of the property.[4] A trial on the merits was held on December 10, 2001.
During trial, the defense submitted testimony of Harold Mire, by way of deposition. Mr. Mire was the general manager of canal systems for AVRICO from 1969 until 1976. He continued to work for AVR ICO's business successor, Southwest Louisiana Land Company, who operated the canals until 1980. Regarding the land at issue, Mr. Mire stated that AVRICO's records dating back to 1969 reflected that its interest in the land was only an "easement."
According to Mire, rights to the property passed through many corporate hands, all of which he could not name. The canal ceased operations in 1980 because it was no longer profitable. The property rights to the contested strip were passed to more successors and eventually were sold to AVICO in approximately 1980. At the time of Mire's deposition in December 2001, there were two houses and one trailer on the lots divided from the contested land.
At the close of trial, the judge requested the parties to submit post argument briefs *555 regarding the applicability of La.Rev.Stat. 41:1321. Thereafter, the trial court entered judgment in favor of the plaintiffs. The trial court found that the defendants did not possess an ownership interest in the property and that the 1910 cash deed confected a sale of the property, rather than a mere servitude. The court of appeal affirmed this judgment.
The School Board and the State now appeal these judgments, arguing that the court of appeal erroneously applied La. Rev state 41:1321 to convert a "right of way" into a fee title sale (a sale of full ownership). They submit that as Mr. Eldredge was only authorized to convey a "right of way" and because there was no express mandate for him to execute a sale, any such sale was null and void, regardless of the execution of sale instruments.

LAW AND DISCUSSION
The first hurdle which we must cross is whether a sale of the school lands or only a transfer of a "right of way" occurred in the instant case. The second hurdle is the determination of whether La.Rev.Stat. 41:1321 applies to cure any informalities in the contract.
Louisiana Civ.Code art.2045 guides us in determining the intent of the parties to a contract. Article 2045 mandates that "[i]nterpretation of a contract is the determination of the common intent of the parties." Furthermore, under La. Civ. Code art.2046, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation need be made into the parties' intent. " Additionally, under La. Civ.Code art.1971, parties are free to contract for any object that is lawful, possible, and determined or determinable. Lastly, this court has concluded that the interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695 (La.6/29/01), 808 So.2d 294.[5]
In this case, the School Board's February 6, 1909, resolution unequivocally speaks to the intent of the School Board in the instant contract. This court has held that a resolution authorizing an agent to act on behalf of the vendor, if referenced in a contract conveying interest in land, is not "extrinsic evidence" and must be considered along with the deed to determine exactly what was conveyed in the contract. Standard Oil Co. of New Jersey v. Evans, 218 La. 590, 50 So.2d 203 (1950). Furthermore, the words "right of way" included in a grant, usually connote a grant of a servitude and not full ownership. Arkansas Improvement Co. v. Kansas City Southern Ry., 189 La. 921, 181 So. 445 (1938).
Given this jurisprudence, we conclude that the annexed minutes detailed that only a donation conveying a "right of way" to United Irrigation for the purposes of building a canal on the instant contested property was authorized. The language of the contract also comports with the passing of only a servitude because the contract clearly limits the use of the land for "construction, operation and maintenance of an irrigating Canal on the strip of land." *556 However, the deed does not provide a gratuitous donation as was intended by the School Board, rather it effectuates a sale of a canal servitude. The language in the cash deed, when referencing and annexed to the February 6, 1909, School Board resolution limiting Mr. Eldredge's authority to provide United Irrigation with a servitude, clearly shows that no sale of full ownership was intended by the School Board. Taking the wording of the contract as a whole, it is abundantly clear that no sale of full ownership occurred.
In short, Mr. Eldredge did not sign an act of donation, but a sale of a canal servitude to United Irrigation, however flawed the sale was. The record reveals that both the trial court and the court of appeal were clearly wrong in finding to the contrary. Therefore, the lower courts erred in finding that a sale of complete or full ownership occurred in the instant contract.
Regarding the second issue, we find that La.Rev.Stat. 41:1321 applies to cure any informalities or flaws in the contract, with regard to Mr. Eldredge's mandatary authority to only "donate" the servitude rather than "sell" it. The Statute does not limit its restorative powers to only sales of full ownership to school lands. Specifically, the Statute ratifies and confirms "[a]ll sales of sixteenth section school lands" notwithstanding informalities in the sales. This statute directly addresses the issue presently before this court, which is whether there is a valid sale. Therefore, the defects which occurred when Mr. Eldredge signed an act of sale of the "right of way," rather than an act of donation of the "right of way," were cured by the Statute upon the execution and filing of the cash deed in conformance with the law, regardless of his lack of authority to so bind the School Board. Even though Mr. Eldredge exceeded the scope of his mandatary power, the Statute nonetheless ratified the sale of the servitude.

CONCLUSION
The cash deed contract signed by the School Board president sold only a "right of way", a servitude, for canal purposes to United Irrigation. No sale of full ownership occurred. For the foregoing reasons, we reverse the judgment of the trial court and court of appeal. We remand this matter to the trial court for determination of whether the canal servitude has terminated for non-use.

DECREE
REVERSED AND REMANDED.
KIMBALL, J., concurs in the result.
KIMBALL, Justice, concurring in result.
I agree with the majority that there was no sale of full ownership of the disputed land between the Vermilion Parish School Board and the United Irrigation and Rice Milling Company.
However, I disagree with the majority's discussion of La. R.S. 41:1321 and any curative effects it may have had. The language contained in the School Board's meeting clearly reflect that the School Board only gave its president, M.L. Eldredge the actual authority "to sign [an] act of donation" to convey a "right of way" to United on the School Board's behalf. Because the School Board only gave Eldredge the express authority to donate a canal servitude, he could not have sold a canal servitude on behalf of the School Board. La. R.S. 41:1321 applies only to sales of sixteenth section school lands and cures any informality or defect in those sales. In the instant case, Eldredge did not effect a sale of the land, which renders *557 discussion of La. R.S. 41:1321 inapplicable to the resolution of this case.
Accordingly, I agree with the majority' judgment reversing the judgments of the lower courts and remanding this matter to the trial court to determine whether the canal servitude has terminated after non-use of three years.
NOTES
[1] On January 7, 1911, the School Board minutes memorialized three resolutions which were titled in globo "Abbeville Canal." The board minutes pertinent to the instant land dispute are:

Jan. 7th, 1911
* * *
Whereas this Board did on February 6th, 1909 by Resolution ... grant to the United Irrigation and Rice Milling Company of New Orleans, Louisiana, a canal right of way along the north, and east sides of Section sixteen (16) in Township twelve (12) South Range two (2) East of Louisiana Meridian, and
Whereas, no deed to said right of way has ever been executed by the authority of this Board,
Now, Therefore Be It Resolved, That the President of this Board be and he is hereby authorized to make and execute in the name of this Board, a duly authentic act transferring to the said United Irrigation and Rice Milling Company, its successors and assigns, the aforesaid strips of land ...
And the said President of this Board, is hereby fully authorized to sign, execute, and, deliver, any and all acts, and, deeds requisite and necessary in the premises, and, all of his acts in carrying out the intent of this resolution are hereby ratified and confirmed.
Duly adopted.
[2] The annexed version of the minutes from February 6, 1909, was nearly identical to the actual minutes with the exception of punctuation, spelling, and grammar differences. The minor differences make no change in the intention or effect of the resolution.
[3] As there are factual errors recited in the opinion of the court of appeal, we will detail the history of United Irrigation and its successors as it appears in the record: United Irrigation was placed into receivership and its assets later liquidated in 1926. United Irrigation's rights "of every kind" to one hundred and ninety-eight tracts of land lying in Vermillion Parish were sold under court order to Acadia-Vermilion Rice Irrigation Company (AVRICO). According to records from the Louisiana Secretary of State, AVRICO was dissolved in 1973.

A similarly named but unaffiliated corporation, Acadia-Vermilion Irrigation Company (AVICO) was formed in 1979. AVICO's corporate charter was revoked in 1990, reinstated in 1992, and again revoked in 1998 by the Secretary of State.
AVICO attained rights to certain properties once held by AVRICO, including the instant strip, but the two have never had any connection in terms of management or ownership. By the time this property passed to AVICO, AVRICO had been dissolved for twelve years. AVICO did not operate the canal system but sold properties it had acquired even when it did not have proper title to such properties. See Porter v. Acadia-Vermilion Irrigation Co., Inc., 479 So.2d 1003 (La.App. 3 Cir.1985).
[4] Because the property in dispute was located in a sixteenth section, which was designated for school purposes by the United States Congress, defendants asserted that the State must be a party to this case. The State of Louisiana Education Department was added as a defendant in the proceeding.
[5] However, when there is anything doubtful in a contractual agreement, a court must endeavor to ascertain the common intention of the parties, rather than adhere to the literal sense of the terms. Boisseau v. Vallon & Jordano, 1932, 174 La. 492, 141 So. 38. Meaning and intent of parties to a written instrument is ordinarily determined from instrument's four corners and extrinsic evidence is inadmissible either to explain or to contradict instrument's terms. Ortego v. State, Dept. of Transp. and Dev., 96-1322 (La.2/25/97), 689 So.2d 1358.