964 So.2d 1087 (2007)
William T. ABBOTT
v.
Joseph RYAN and Stephanie C. Ryan.
No. 2006-CA-1643.
Court of Appeal of Louisiana, Fourth Circuit.
August 1, 2007.
*1088 Patrick D. Breeden, New Orleans, LA, for Plaintiff/Appellant, William T. Abbott.
Michael L. Vincenzo, John A. Cangelosi, King, Leblanc & Bland, P.L.L.C., New Orleans, LA, for Defendants/Appellees, Joseph Ryan and Stephanie C. Ryan.
(Court composed of Judge JAMES F. McKAY, III, Judge DAVID S. GORBATY, Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
This case involves a dispute regarding an agreement to purchase and sell residential property. The plaintiff, William T. Abbott, is appealing a summary judgment granted by the trial court in favor of the defendants, Joseph Ryan and Stephanie C. Ryan (the "Ryans").

STATEMENT OF FACTS AND PROCEDURAL HISTORY
On or about January 30, 2005, the Ryans made an offer to purchase the property located at 1312 Octavia Street in New Orleans for the sum of $450,000.00. In making the offer, they executed the standard form of agreement to purchase and sell that was customarily used by the New Orleans realtors' association (the "Agreement"). Mr. Abbott, who owned the Octavia Street property, accepted the Ryans' offer on January 30, 2005, by signing the Agreement. Pursuant to a dual agency agreement that the Ryans, Mr. Abbott, and Melanie Zaffuto and Joseph Zaffuto (the "Zaffutos") of Crest Realty & Associates, Inc. executed, the Zaffutos were the designated real estate agents for both the Ryans and Mr. Abbott in connection with the Agreement.
The Agreement contained the following language relating to the inspection of the property:
PURCHASER shall have an inspection period of ten (10) calendar days, commencing the first day after acceptance of this agreement wherein, PURCHASER may, at his expense, have any inspections made by experts or others of his choosing. Such inspections may include, but are not limited to, inspections of or for termites and other wood destroying insects . . . and analysis of synthetic stucco, appliances, structures, roof, heating, cooling, electrical, plumbing systems . . . and any items addressed in Seller's Property Disclosure Statement. . . . Upon completion of such inspections, PURCHASER must provide SELLER (or SELLER'S DESIGNATED AGENT) with a copy of all inspection reports which subsequently becomes [sic] the property of the seller.
The Agreement further provided that if the purchaser were not satisfied with the property's condition as described in the inspection reports, the purchaser had two options. The purchaser "(1) may elect, in writing, to terminate the Agreement to Purchase, or (2) must indicate in writing the deficiencies and desired remedies." The seller then had seventy-two hours to respond in writing regarding the seller's willingness to remedy the deficiencies. If the seller refused to remedy any or all of the deficiencies, the purchaser had twenty-four hours from the date the seller responded in writing or was required to respond, whichever was earlier, to "(1) accept SELLER'S response to PURCHASER'S written requests or (2) accept the property *1089 in its present condition, or (3) to elect to terminate the Agreement to Purchase."
Finally, the Agreement provided that if the seller refused to remedy any or all of the property's defects and the purchaser either failed to respond within the twenty-four hour deadline or elected in writing to terminate the agreement, "the Agreement shall be ipso facto Null and Void (except for return of deposit). . . ." Further, the agreement stated that in such an event:
ALL PARTIES AGREE TO SIGN A CANCELLATION WITHIN 24 HOURS ENTITLING THE PURCHASER(S) TO THE RETURN OF HIS DEPOSIT IN FULL, AND NEITHER PARTY SHALL THEREAFTER HAVE ANY FURTHER OBLIGATION TO THE OTHER.
Although the standard form of the Agreement provided that the inspection period would last for a period of ten calendar days, the Agreement signed by the Ryans had the word "calendar" deleted and the word "working" inserted in place of the word "calendar." The change was initialed by the Ryans, and on January 30, 2005, Mr. Abbott accepted the agreement with the change that was made.
According to an affidavit of Mr. Ryan, after the Agreement was executed by all parties, the Ryans had "certain inspections performed of the property including a general inspection performed by Gurtler Brothers and certain termite inspections."[1] Mr. Ryan also stated in his affidavit that all inspections of the property were completed prior to the end of the day on February 14, 2005. This was the time that the Ryans believed was the end of the inspection period under the Agreement.
Additionally, Mr. Ryan's affidavit said that all written inspection reports were provided or made available to the Zaffutos, acting as Mr. Abbott's real estate agent, prior to February 14, 2005. The affidavit stated that based on the results of the inspection report of Gurtler Brothers as it pertained to the roof of the residence on Octavia Street, Wayne Frizell was contacted to give the Ryans estimates for the cost of repairing the roof and for the cost of replacing the roof. The affidavit made it clear that Mr. Frizell "was not hired to conduct an inspection of the roof or any other part of the Octavia Property."
Mr. Ryan's affidavit further claimed that based on the Gurtler Brothers report and on the termite inspection that had been performed, Mr. Ryan on February 12, 2005, "proposed a reduced offer to Abbott, in writing through the Agent, to purchase the Octavia Property." The affidavit further provided that "[i]n connection with the reduced offer . . . I prepared a written list of deficiencies and proposed remedies, which I forwarded to the Agent with the reduced offer." The affidavit then stated that Mr. Abbott proposed a counteroffer through the real estate agent. The counteroffer contained certain reductions to the purchase price that was contained in the Agreement but did not offer to remedy all of the deficiencies noted by the Ryans. Finally, the affidavit stated that the Ryans elected to terminate the agreement by allowing Mr. Abbott's counteroffer to lapse.
In response to the assertions of Mr. Ryan that were set forth in his affidavit, Mr. Abbott executed an affidavit. In his affidavit, Mr. Abbott stated that both he and Ms. Zaffuto understood that the term "working days" as used in the inspection period of the agreement meant Mondays *1090 through Saturdays but not Sundays and Mardi Gras Day, which was on a Tuesday during the inspection period. Therefore, Mr. Abbott asserted that he received the Gurtler Brothers inspection report after the inspection period deadline, which he contended was on February 11, 2005. Mr. Abbott also said in his affidavit that he never received an inspection report from Mr. Frizell, which Mr. Abbott claimed was the basis for the Ryans' amended offer. Finally, Mr. Abbott stated that "if he had known of Frizell, he would have considered lowering the price of the property to pay for roof repairs not specifically addressed in the Gertler [sic] Brothers inspection report."
In the instant case Mr. Abbott filed suit for breach of contract against the Ryans demanding specific performance of the Agreement or damages from the loss that he allegedly incurred when he ultimately sold the Octavia Street property for less than the purchase price under the Agreement. The Ryans filed a reconventional demand against Mr. Abbott for breach of the Agreement, and they also filed a third party claim against the agency for which the Zaffutos, acting as dual real estate agents for the Ryans and Mr. Abbott, worked. Mr. Abbott filed a motion for summary judgment on his claims against the Ryans, and his motion was denied.
The Ryans then filed a cross-motion for summary judgment against Mr. Abbott, and he filed a motion for a new trial with respect to the judgment denying his motion for summary judgment. After a hearing on the motion for a new trial and the Ryans' motion for summary judgment, the trial court judge rendered judgment denying Mr. Abbott's motion for a new trial and granting the Ryans' motion for summary judgment. The trial court judge also ordered the return of the $2,000.00 deposit that was made pursuant to the terms of the Agreement. Mr. Abbott is now appealing the granting of summary judgment in favor of the Ryans.

DISCUSSION
Standard of Review
Appellate courts review the granting of summary judgment de novo under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Reynolds v. Select Props., Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. See also Indep. Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257, p. 7 (La.2/29/00), 755 So.2d 226, 230.
A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). If the court finds that a genuine issue of material fact exists, then summary judgment must be rejected. Oakley v. Thebault, 96-0937, p. 4 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490. The burden of proof does not shift to the party opposing the summary judgment until the moving party first presents a prima facie case that no genuine issues of material fact exist. Id. At that point, if the party opposing the motion "fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." La. C.C.P. art. 966(C)(2). Summary judgment should then be granted.
In Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606, 610, the Louisiana Supreme Court stated that "[a] fact is `material' when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." Additionally, *1091 the Supreme Court stated that "[f]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." Id. In Jones v. Estate of Santiago, 03-1424 (La.4/14/04), 870 So.2d 1002, 1006. the Supreme Court, quoting Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750, explained that a factual issue is genuine if reasonable persons could disagree on the issue, but the Supreme Court further explained that if reasonable persons could only reach one conclusion on the issue, there would be no need for a trial on that issue.
Assignments of Error
Although Mr. Abbott's brief does not contain specific assignments of error, it does list certain issues that this Court is being requested to review. Mr. Abbott contends that there are unresolved genuine issues of material fact and law regarding the deadline for inspecting the property, what roof inspections were conducted, and whether the Agreement was null and void once the Ryans failed to respond to Mr. Abbott's counteroffer.
Inspection Deadline
The Agreement provided that there was a ten "working day" inspection period beginning on the first day after the acceptance of the Agreement. On January 30, 2005, Mr. Abbott accepted the Agreement. Mr. Abbott argues that Saturdays should be considered working days for purposes of determining the expiration date of the inspection period, although he agrees that Mardi Gras Day, February 8, 2005, and Sundays were not working days. If Saturdays are considered working days for purposes of the inspection period, then the inspection period ended on Friday, February 11, 2005. If Saturdays are not considered working days for purposes of the inspection period, then the inspection period ended on Monday, February 14, 2005. The Ryans gave their inspection reports to Ms. Zaffuto, as agent for Mr. Abbott, prior to February 14, 2005. Therefore, if Saturdays were not working days, the inspection was timely completed, but if Saturdays were working days, the inspection may not have been timely completed.[2]
La. Civil Code art. 2047 provides in relevant part that "[t]he words of a contract must be given their generally prevailing meaning." In the United States a work week is generally considered to be Monday through Friday, although many people work on Saturdays, Sundays, and holidays. Unless specifically included in a definition of work days, Saturdays and Sundays are not normally considered work days. Therefore, we find that the term "work days" as used in the inspection provision of the Agreement included Mondays through Fridays and excluded Saturdays, Sundays, and holidays. This finding comports with the conclusion in Dupree v. International House of Pancakes, 05-1021, p. 7 n. 4 (La.App. 1 Cir. 5/5/06), 934 So.2d 183, 187 n. 4, where the First Circuit Court of Appeal stated that "we note that the fifth day, January 24, 2004, was a Saturday, and thus not a `working day'."
Based on the foregoing, we find that the inspection period under the Agreement ended on Monday, February 14, 2005. Thus, the inspection reports were timely presented to Ms. Zaffuto, as Mr. Abbott's real estate agent. Mr. Abbott's claim regarding the meaning of the phrase "working days" is without merit.
*1092 Roof Inspections
Mr. Abbott contends that the Ryans had two roof inspections performed on the Octavia Street property and that the report from only one of the inspections was presented to Ms. Zaffuto, acting as Mr. Abbott's real estate agent. Mr. Ryan's affidavit in support of the Ryans' motion for summary judgment stated that a roof inspection was conducted by Gurtler Brothers. The inspection report clearly discussed a number of deficiencies in the roof. The report was in writing and was timely furnished to Mr. Abbott through his real estate agent. Mr. Ryan's affidavit further stated that he hired Wayne Frizell, a roofer, not to inspect the roof but to give the Ryans an estimate of what it would cost to repair the roof and, alternatively, what it would cost to replace the roof.
Mr. Ryan's affidavit stated that Mr. Frizell was not hired to perform a roof inspection, and Mr. Abbott's affidavit clearly stated that "he had no way of knowing what inspectors were hired by the Ryans, when they conducted their inspections, or the results of those inspections, except by receiving copies of inspection reports, as required by the Agreement." Mr. Ryan's affidavit presented a prima facie case that Mr. Frizell did not conduct a roof inspection and was simply hired to furnish estimates for the cost of repairing or replacing the roof based on the findings in the Gurtler Brothers report. The burden of proof then shifted to Mr. Abbott to produce factual support to establish that he would be able to carry his evidentiary burden of proof regarding the roof inspection at a trial. Mr. Abbott not only has failed to produce such factual support, he has also admitted in his affidavit that he did not know what inspectors, other than Gurtler Brothers, were hired by the Ryans. Mr. Abbott's claim that Mr. Frizell conducted a roof inspection is without merit.
The Agreement
Mr. Abbott contends that under the Agreement, he was not given a "fully informed opportunity to remedy defects or accept a reduced `counter' offer." The Agreement clearly set forth the rights and obligations of the parties to the Agreement. The Agreement provided that if the Ryans were not satisfied with the condition of the Octavia Street property, they could either terminate the Agreement or give written notice of the deficiencies and the desired remedies. Mr. Ryan chose the latter option, and in an e-mail dated February 13, 2005, to the Zaffutos, who were acting as dual agents for both the Ryans and for Mr. Abbott, Mr. Ryan detailed the problems with the Octavia Street property that were disclosed by the Gurtler Brothers inspection report and by a termite inspection report that was obtained by the Ryans. The e-mail also listed the concessions that the Ryans were requesting that Mr. Abbott make.
At that point, under the terms of the Agreement, Mr. Abbott had seventy-two hours to respond to the written notice. When he responded, he offered to pay $2,000.00 toward termite treatment in connection with the Ryans' request to have the property treated for termites prior to the closing. Mr. Abbott failed, however, to address the remaining concessions requested by the Ryans, which were a $2,000.00 reduction in the sale price as a "roof allowance" and a $3,000.00 reduction in the sale price to partially satisfy the cost of bringing the electrical system into compliance with current building codes.
The Agreement provided that if Mr. Abbott refused to remedy any or all of the deficiencies noted by the Ryans, then the Ryans had twenty-four hours after Mr. Abbott responded to their list of deficiencies to (1) accept Mr. Abbott's offer to pay $2,000.00 for the termite treatment, (2) *1093 accept the Octavia Street property in its then present condition, or (3) terminate the Agreement. The Ryans chose the third option. When the Ryans chose to terminate the Agreement, the Agreement was then, according to the Agreement, "ipso facto Null and Void." The Ryans also had the right under the terms of the Agreement to the return of their deposit. Based on the foregoing, we find that Mr. Abbott's claims regarding his rights under the Agreement are without merit.
Summary Judgment
We find that the Ryans presented a prima facie case that the Agreement is null and void and that they are entitled to the return of their deposit. Mr. Abbott was unable to carry his burden of producing factual support to establish that he would be able to satisfy his burden of proof at trial. We find no genuine issue of material fact in the instant case. Thus, the Ryans are entitled to summary judgment in their favor and to the return of their deposit.

DECREE
We find no error in the trial court judgment. That judgment is hereby affirmed.
AFFIRMED.
NOTES
[1] Gurtler Brothers refers to Gurtler Bros. Consultants, Inc., a company that, according to its letterhead, conducts home and commercial building inspections. In this opinion we will refer to Gurtler Bros. Consultants, Inc. as Gurtler Brothers.
[2] Mr. Abbott's affidavit states that he received the Gurtler Brothers report after February 11, 2005, and Mr. Ryan's affidavit states that Mr. Abbott's real estate agent was given all written inspection reports prior to the end of the day on February 14, 2005.