PAUL A. BONIN, Judge.
 

 ^Defendant, Calamar, N.V. (“Calamar”), a Netherlands Antilles corporation doing business in the State of Louisiana, appeals the trial court’s judgment granting of a motion for summary judgment in favor of plaintiff, Leonard D. Lalla (“Mr. Lalla”), and denying Calamar’s cross motion for summary judgment.
 
 [1]
 
 For the reasons that follow, we convert the appeal to a writ, grant the writ, and affirm the trial court’s judgment.
 

 STATEMENT OF FACTS AND PROCEDURAL HISTORY
 

 Mr. Lalla and Calamar negotiated a written Agreement to Purchase (“Agreement”) commercial property owned by Ca-lamar, located at 3311 Canal Street in New Orleans. Before Hurricane Katrina the property had been used as a Wal-greens drug store. In the negotiations both parties were represented by agents with commercial experience. The resulting Agreement executed on March 2, 2007 acknowledged that the property had been damaged by Hurricanes Katrina and Rita in 2005, and had been gutted but not restored. The purchase price was $1,900,000. The property was to be sold “as is”, subject to the following inspection clause:
 

 J^PROPERTY CONDITION CLAUSE THE PURCHASER ACKNOWLEDGES THAT THE PRICE OF THE PROPERTY WAS NEGOTIATED BASED UPON THE PROPERTY’S PRESENT CONDITION: ACCORDINGLY, SELLER IS NOT OBLIGATED TO MAKE REPAIRS TO THE PROPERTY, UNLESS OTHERWISE STATED HEREIN, AND PURCHASER HAS NO RIGHT TO DEMAND ANY REPAIRS, INCLUDING REPAIRS REQUIRED BY LENDER. THE SELLER IS RESPONSIBLE FOR MAINTAINING THE PROPERTY IN SUBSTANTIALLY THE SAME OR BETTER CONDITION AS IT WAS WHEN PURCHASE AGREEMENT WAS FULLY EXECUTED. Within 20 calendar days, commencing the first day after acceptance of this agreement, PURCHASER may, at his expense, have any inspections made by experts or others of his choosing. Such inspections may include, but are not limited to, inspections of or for termites and other wood destroying insects, and/or damage from same, appliances, structures, roof, heating, cooling, electrical, plumbing systems, square footage, and any items addressed in the Property Disclosure Addendum. Upon completion of such inspections, PURCHASER must provide SELLER with a copy of all inspection reports. If PURCHASER is not satisfied with the present condition of the property as reflected in the inspection reports, PURCHASER must indicate in writing the deficiencies with which he is not satisfied and SELLER will have 72 hours to respond in writing his willingness to remedy the deficien
 
 *930
 
 cies. Should SELLER refuse to remedy any or all of the deficiencies listed by the PURCHASER, then PURCHASER shall have 24 hours from the date of SELLER’S written response or 24 hours from the date that SELLER’S response was due, whichever is earlier, to: (1) accept SELLER’S response to PURCHASER’S written requests; or (2) accept the property in its present condition, or (3) to elect to terminate the Agreement to Purchase. PURCHASER’S response shall be in writing.
 

 The Agreement also provided for specific performance in the event of non-performance by the other party, all costs associated with a default, and the award of attorney’s fees in the event of a breach.
 

 Mr. Lalla tendered a deposit in the amount of $50,000 in accordance with the terms of the Agreement. The Property Inspection Clause, which was the subject of a fair amount of negotiations between the parties, provided an inspection deadline of March 23, 2007. Mr. Lalla promptly retained an architect, Ladd LEhlinger (“Mr. Ehlinger”), to inspect the property. Following his inspection, Mr. Ehlinger identified various defects in the property and further reported that the approximate cost to “restore the building to functional occupancy” would be $600,000, including architectural and engineering fees,
 

 On March 15, 2007, Mr. Lalla’s real estate agent, Maria McLellan, forwarded this information to Calamar’s real estate broker, Jason Lapene. On March 16, 2007, Calamar advised that it was refusing to repair the deficiencies or to reduce the purchase price. Within 24 hours of Cala-mar’s response, Mr. Lalla exercised his option to terminate the Agreement consistent with the written provisions of the Agreement, and demanded the return of his deposit. Calamar refused the return of the deposit. Only 15 days had elapsed from the time of signing of the Agreement to the time that Calamar was on clear notice that the sale would not occur.
 
 [2]
 

 On June 13, 2007, Mr. Lalla filed a petition for damages for breach of contract, consequential costs, return of the $50,000 deposit, and for costs and attorneys’ fees against Calamar. Calamar reconvened on August 10, 2007, seeking specific performance or forfeiture of the deposit, together with attorney’s fees, and costs.
 

 On December 19, 2007, Mr. Lalla filed a motion for summary judgment. He argued that: 1) the terms of the Agreement were clear and explicit; 2) he was entitled to inspect the property for defects pursuant to the Property Condition Clause; 3) upon discovering the defects identified in the Inspection Report, he complied with the Agreement by timely providing Cala-mar with a copy of the | ^Inspection Report, and 4) because Calamar refused to remedy the defects or reduce the purchase price, he timely exercised his option to terminate the Agreement and sought the return of the deposit in full plus an equal amount, plus consequential damages, attorney’s fees and costs.
 

 Calamar filed a cross motion for summary judgment, arguing that pursuant to the Agreement, Mr. Lalla accepted the property “as is” and, therefore, was not entitled to the relief sought. Calamar submits that Mr. Lalla, directly or through his agents, knew or should have known of the defects when he entered into the Agreement because they were open and obvious. Calamar also argued that the inspection
 
 *931
 
 reports were insufficient and not in customary format.
 

 Both motions for summary judgment were heard by the trial court on February 15, 2008. The trial court granted Mr. Lalla’s motion for summary judgment and denied Calamar’s cross motion. The judgment was signed February 25, 2008. The judgment merely decreed that the summary judgment was “granted”. However, the judgment neither expressed what specific relief had been awarded to Mr. Lalla or what demand(s) Calamar must satisfy. Calamar’s motion for devolutive appeal followed.
 

 PRELIMINARY DISCUSSION
 

 Before we address the merits of the summary judgment in favor of Mr. Lalla, we must address the appealability of the judgment itself. The judgment itself, as we have noted, simply stated that summary judgment had been granted in Mr. Lalla’s favor. It also merely denied Cala-mar’s motion for summary judgment, but did not, for example, dismiss Calamar’s reconventional demand with prejudice. While such a judgment might qualify as a partial final judgment pursuant to La. | r,C.C.P. art. 1915(B)(1), it would need such a designation by the district judge in order for a party to have an appeal of right.
 
 Yokum v. Van Calsem,
 
 07-0676, p. 5, 6 (La.App. 4 Cir. 3/26/08), 981 So.2d 725, 730.
 
 [3]
 
 However, this judgment did not receive the requisite jurisdictional designation by the district judge. It is, therefore, an interlocutory judgment, and not a partial final judgment. An interlocutory judgment is not appealable unless expressly provided by law. La. C.C.P. art. 2083(C).
 

 The proper procedural vehicle to seek review of an interlocutory judgment that is not immediately appealable is an application for supervisory writ. La. C.C.P. art. 2083.
 
 Gieck v. Tenet Healthcare Corp.,
 
 07-1597, p. 3 (La.App. 4 Cir. 1/23/08), 976 So.2d 767, 769. Therefore, in order for us to review this matter and grant any relief, it is necessary that we convert the appeal to an application for supervisory writ, which we grant. LSA-Const. art. V, § 10(A) provides that a court of appeal has “supervisory jurisdiction over cases which arise within its circuit.”
 
 First National Bank of Picayune v. Pearl River Fabricators, Inc.,
 
 06-2195, p. 11 (La.11/16/07), 971 So.2d 302, 310.
 

 STANDARD OF REVIEW
 

 Appellate courts review the granting of summary judgment
 
 de novo
 
 under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate.
 
 Hood v. Cotter,
 
 08-0215, 08-0237, p. 5 (La.12/02/08), 5 So.3d 819, 822-23, 2008 WL 5146659.
 
 See also Reynolds v. Select Properties, Ltd.,
 
 93-1480 (La.4/11/94), 634 So.2d 1180.
 

 |7A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). If the court finds that a genuine issue of material fact exists, then summary judgment must be rejected.
 
 *932
 

 Oakley v. Thebault,
 
 96-0937, p. 4 (La. App. 4 Cir. 11/13/96), 684 So.2d 488, 490. The burden of proof does not shift to the party opposing the summary judgment until the moving party first presents a prima facie case that no genuine issues of material fact exist.
 
 Id.
 
 At that point, if the'party opposing the motion “fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.” La. C.C.P. art. 966(C)(2). Summary judgment should then be granted.
 
 Hood,
 
 08-0215, p. 6, 5 So.3d at 823, 2008 WL 5146659.
 

 In
 
 Hardy v. Bowie,
 
 98-2821, p. 6 (La.9/8/99), 744 So.2d 606, 610, the Louisiana Supreme Court stated that “[a] fact is ‘material’ when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery.” Additionally, the Supreme Court stated that “[fjacts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute.”
 
 Id.
 

 DISCUSSION
 

 Contracts have the effect of law between the parties, and the courts are bound to interpret them according to the common intent of the parties. La. C.C. arts. 1983 and 2045. If the words of a contract are clear, unambiguous, and lead to |sno absurd consequences, the court need not look beyond the contract language to determine the true intent of the parties. La. C.C. art. 2046. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. “When a contract is not ambiguous or does not lead to absurd consequences, it will be enforced as written and its interpretation is a question of law for a court to decide.”
 
 American Deposit Ins. Co. v. Myles,
 
 2000-2457, p. 5 (La.4/25/01), 783 So.2d 1282, 1286.
 
 See also Associated Acquisitions, L.L.C. v. Carbone Properties of Audubon, L.L.C.,
 
 2007-0120, p. 6 (La.App. 4 Cir. 7/11/07), 962 So.2d 1102, 1106;
 
 Abshire v. Vermilion Parish School Bd.,
 
 02-2881, p. 5 (La.2003), 848 So.2d 552, 555. Meaning and intent of parties to a written instrument is ordinarily determined from the instrument’s four corners and extrinsic evidence is inadmissible either to explain or to contradict the instrument’s terms.
 
 Abshire,
 
 02-2881, p. 5, 848 So.2d at 555,
 
 citing Ortego v. State, Dept. of Transp. and Dev.,
 
 96-1322 (La.2/25/97), 689 So.2d 1358. “The contract is the law between the parties, and no further interpretation may be made in search of the parties’ intent when the words of the contract are clear, explicit and lead to no absurd consequences.”
 
 Taylor v. Manuel,
 
 01-0653, p. 3 (La.App. 3 Cir. 10/31/01), 799 So.2d 812, 815;
 
 citing Woolf & Magee v. Hughes,
 
 95-863, p. 5 (La.App. 3 Cir. 12/6/95); 666 So.2d 1128, 1131;
 
 writ denied,
 
 96-0073 (La.3/15/96), 669 So.2d 427.
 

 Recalling the rules of summary judgment practice and review and of contract interpretation, we consider
 
 de novo
 
 the provisions of the contract in question. Calamar asserts that there are questions of material fact relative to the contradictory language of the Agreement and the parties’ intent as to the underlying transaction. More specifically, Calamar argues that the “as is” clause | fland other disclaimers relative to the condition of the property contradict the Property Condition Clause, creating an ambiguity in the Agreement and questions of fact as to the parties’ intent. We disagree.
 

 Calamar acknowledges that it consented to the Property Condition Clause and par
 
 *933
 
 ticipated in its revision. However, Cala-mar argues that there was an extra-contractual understanding between the agents of the parties that such language was only-allowed to stand to cover extraordinary hidden environmental conditions, not the open and obvious conditions of the property-
 

 The Property Condition Clause contained in the Agreement is not limited to extraordinary hidden conditions. To the contrary, the clause specifically provided: “inspections may include, but are not limited to, inspections of or for termites and other wood destroying insects, and/or damage from same, appliances, structures, roof, heating, cooling, electrical, plumbing systems, square footage.... ”
 

 Clearly, Mr. Lalla had the right to inspect the property for the type of defects described in the Property Condition Clause and others. Calamar could have insisted on language in its agreement which specifically restricted the scope of the inspection clause or could have eliminated the inspection clause altogether. Although additional inspection or “escape” clauses were in fact eliminated from preliminary drafts of the Agreement, the fact remains that Calamar knowingly consented to the Property Condition Clause contained in the final Agreement they executed. We conclude that the Property Condition Clause and the “as is” provision are not in conflict and do not create any ambiguity. The Agreement is clear and explicit. The property was offered for sale “as is” (considering the condition of the building following the two hurricanes), subject to Mr. Lalla’s final inspection.
 

 110CaIamar further asserts that the trial court erred in failing to consider the nature of the defects alleged by Mr. Lalla in trying to avoid the Agreement. Specifically, Calamar contends that the inspection report includes the repair/replacement of such items as ceiling and ceiling grid system, electrical wiring, wall board and partitions, fixtures, light fixtures, HVAC piping and duct work, and glass store front, all conditions that were plainly obvious when the Agreement was signed. Cala-mar suggests that Mr. Lalla’s reliance on an inspection that pointed out such obvious defects is disingenuous and nothing more than a pretext to avoid the sale. Calamar relies upon
 
 Bond v. Broadway,
 
 607 So.2d 865, 867 (La.App. 2 Cir.1992) in which the appeals court upheld a trial court’s factual determination that a prospective purchaser of a home could not wait until the night before a scheduled “as is” sale to make an inspection and, by “citing minor problems that were easily discoverable by simple inspection,” avoid the sale. On the facts
 
 Bond
 
 does not support Calamar. Mr. Lalla promptly exercised his right to an inspection, and engaged a professional architect who identified problems not discoverable on mere inspection. Nothing identified by the purchaser in
 
 Bond
 
 could affect the use of the property as a residence.
 

 In
 
 Abbott v. Ryan,
 
 06-1643, p. 10, 11 (La.App. 4 Cir. 8/1/07), 964 So.2d 1087, 1093, this court upheld the granting of a motion for summary judgment in favor of purchasers, ordering return of their1 deposit (only) because the purchase agreement had been terminated. The
 
 Abbott
 
 purchasers properly terminated the purchase agreement by timely adhering to the specific provisions of the agreement when the seller refused to remedy the deficiencies noted or reduce the price.
 

 In this case, once Calamar elected not to meet the new demands of Mr. Lalla and Mr. Lalla elected not to purchase the property on the terms and conditions of lnthe Agreement; the Agreement was terminated, not breached. The obligations set out in the Agreement were null and void, ex-
 
 *934
 
 eept for the ancillary obligation of the return of the deposit. By the Agreement’s provisions, if the contract became null and void the only specific reference related to signing a cancellation. There was no provision for a deadline to return the deposit or attorney’s fees or costs.
 
 [4]
 

 “As a general rule, attorney fees are not due and owing a successful litigant unless specifically provided for by contract or by statute.”
 
 Beier Radio, Inc. v. Black Gold Marine, Inc.,
 
 83-2141 (La.4/2/84), 449 So.2d 1014, 1015. In the Agreement at hand, whose provisions are the law between the parties, there are two instances when an award of attorney’s fees would be appropriate. The first is in the event that the Seller is unable to timely deliver merchantable title. As the contract was terminated by the Purchaser, there was no obligation on part of the Seller to deliver title, hence no attorney’s fees are due.
 

 The second possible provision for attorney’s fees is to the Purchaser “from the defaulting party” in enforcing its rights. Since no party is in default, there are no attorney’s fees due.
 

 The only provision related to return of the deposit did not include a provision for attorney’s fees, costs or damages and no time frame within which to return the deposit.
 

 Unless otherwise specified, if all express conditions are not timely met, or if this agreement is rendered null and void, the Seller’s Agent shall forthwith return the Purchasers deposit without any further liability on the part of either party, or the Seller’s Agent, regarding this Agreement.
 

 |,.¿There is no contractual provision for attorney’s fees related to return of the deposit. There is no ‘right’ to be enforced. In the absence of stipulating a definite date and time, the deposit should have been returned to Mr. Lalla in a reasonable time.
 
 [5]
 
 La. C.C. art. 1773.
 
 Jarrell v. Carter, et al.,
 
 93-600 (La.App. 1 Cir. 12/29/93), 632 So.2d 321, 324,
 
 writ denied
 
 94-0700 (La.4/29/94), 637 So.2d 467.
 
 [6]
 

 CONCLUSION
 

 Accordingly, we convert Calamar, NV’s appeal of the granting of the motion in summary judgment in favor of Mr. Lalla and denying Calamar NV’s cross motion for summary judgment to an application for supervisory writ and exercise our supervisory jurisdiction. We find that the Agreement is clear and unambiguous and must be enforced as written. We find that the trial judge did not err in granting Mr. Lalla’s motion for summary judgment and denying Calamar NV’s cross motion for summary judgment.
 
 [7]
 

 DECREE
 

 It is ordered that the judgment on the principal demand in favor of Leonard D.
 
 *935
 
 Lalla and against Calamar, N.V. is affirmed.
 

 APPEAL CONVERTED TO WRIT; WRIT GRANTED; AFFIRMED.
 

 [1]
 

 . The judgment submitted to the trial court for rendition incorrectly stated that Calamar’s motion for summary judgment is denied and Mr. Lalla's cross motion for summary judgment is granted. However, the record reflects that Mr. Lalla brought the motion for summary judgment, and Calamar brought the cross motion for summary judgment. Nevertheless, it is clear from the judgment that the trial court ruled in favor of Mr. Lalla.
 

 [2]
 

 . The time lapsed was less time than the entire inspection period agreed to by the parties. At oral argument, counsel also agreed that this transaction was between sophisticated parties in a commercial transaction of close to $2 million.
 

 [3]
 

 . La. C.C.P. art. 1915(B)(1) provides: "When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.”
 

 [4]
 

 . Earlier versions of the proposed agreement did not contain the "null and void” language. The parties could have provided that the Agreement was null and void with the exception of return of the deposit but did not do so.
 

 [5]
 

 . The parties informed the court at oral argument that the deposit of $50,000 had been returned by Calamar and received by Lalla. Since the deposit has been returned, there is no further relief which can be granted by the court.
 

 [6]
 

 .
 
 In an earlier proposed agreement,
 
 deposit
 
 was to be returned ‘immediately’.
 

 [7]
 

 . The effect of affirming the summary judgment in favor of Lalla precludes granting Ca-lamar any relief on its reconventional demand against Lalla. La. R.S. 13:4231(3) and La. C.C.P. art. 1061(B).