MOLAISON, J.
*379 In this action based upon an alleged breach of a service contract between a landowner and commercial developer, the developer appeals the granting of a summary judgment in favor of the landowner on the issue of reimbursement of certain construction costs. For the reasons that follow, we affirm.
PROCEDURAL HISTORY
Appellant, Kimble Development, LLC. ("Kimble"), entered into a Contract for Development with appellee, Village Shopping Center Partnership ("Village"), in 2013 for the purpose of building an O'Reilly Auto Parts store on Village's property in St. Charles Parish. The contract provided that Village would pay Kimble a development fee of $ 35,000, and that Kimble would be responsible for all construction costs of the building that exceeded $ 688,944, with the exception of "unforeseen" or "uncontrollable costs" such as asbestos or environmental mitigation and site clean-up. A contract addendum executed by the parties in June of 2015, adjusted the project cost to $ 711,576.71 when power lines at the site were required to be run underground and the store's windows had to be upgraded according to building code standards. A subsequent change order dated August 4, 2015, increased the amount again by $ 1,837.77, for a total of $ 713,413.71. When the final price of the project reached $ 751,900.00, Village called upon Kimble for a reimbursement of $ 40,324.28, which was the amount exceeded in the contract addendum that Village had paid to Kimble, the general contractor as well as the vendors and subcontractors that Kimble hired for the project. After unsuccessfully trying to resolve the matter, Village filed the instant lawsuit on December 21, 2016, which further sought penalties, interest, attorney's fees and costs.
On February 17, 2017, Kimble filed a peremptory exception of no right of action, which was denied on May 17, 2017. After Kimble filed an answer to Village's petition for damages, Village filed a motion for summary judgment, which was granted by the trial court on July 20, 2018. Kimble timely sought the instant devolutive appeal from that judgment.
FACTS
Kimble asserts that the exceeded estimates in this matter occurred as a result of the cost of materials that it was required to purchase from O'Reilly, referred to as O'Reilly National Account items, which included components such as the building's shell and HVAC system. In the deposition testimony of Kimble's owner, Michael Kimble, he stated that in his prior experience developing O'Reilly's Auto Parts stores, the invoice for the National Account items at the end of the project never exceeded the $ 100,000 estimated amount. Mr. Kimble testified that in the construction of the O'Reilly's store on Village's property, however, the cost exceeded the estimated amount because the square footage of the building increased from 6,800 square feet to 7,125 square feet. Kimble contends that it "neither foresaw nor controlled the cost of the National Account items as is required under Section 5 of the Contract to hold Kimble Development responsible."
Conversely, Village argues that the cost overruns were the result of Kimble incorrectly conveying the correct square footage of the store to O'Reilly. As explained by Village in its brief:
*380 Although the contract lists the size at 6,800 square feet, by early 2013, Kimble was aware that the building was actually 7,125 square feet. In April 2013, O'Reilly Auto Parts emailed Peter Glaser of Village a copy of a "Draft New Construction Building Lease Agreement for 7,125 square foot building," and Kimble's project manager, Scott Russell, was copied on the email.
In confirming these facts during his deposition testimony, Mr. Kimble acknowledged that the failure to adjust the estimate to 7,125 square feet was an "oversight." Village also contends that the contract between the parties specifically stated that Kimble, as the project's contractor, was responsible for all construction costs, which the National Account items were a part of.
In its motion for summary judgment, Village asserted that certain facts were undisputed: 1) whether Kimble had warranted that the final cost of the project would not exceed $ 713,413.71; 2) whether the total cost of the project paid by Village amounted to $ 761,700.99, and; 3) whether the costs of the project were foreseeable and controllable. In support of its motion for summary judgment, Village attached several exhibits, which were referenced at the hearing and in the trial court's reasons for judgment.[1] Conversely, in opposing Village's motion for summary judgment, Kimble argued that the cost overruns for the project were both unforeseen and uncontrollable.
Assignment of error
On appeal, Kimble asserts that the trial court erred in granting Village's motion for summary judgment. Specifically, Kimble first argues that the trial court incorrectly applied the rules of contractual interpretation to limit the construction costs to environmental related site costs. Kimble also argues that the trial court erred in finding that the questions of fact it raised were inapplicable to the instant case in light of the wording of the contract.
LAW AND ANALYSIS
According to La. C.C.P. art. 966(3), "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact, and is favored and designed to secure the just, speedy, and inexpensive determination of every action. Populis v. State Dep't of Transportation & Dev. , 16-655 (La. App. 5 Cir. 5/31/17), 222 So.3d 975, 979, writ denied , 17-1106 (La. 10/16/17), 228 So.3d 753, quoting *381 Pouncy v. Winn-Dixie La., Inc. , 15-189 (La. App. 5 Cir. 10/28/15), 178 So.3d 603, 605. A material fact is one that potentially insures or prevents recovery, affects a litigant's ultimate success, or determines the outcome of a lawsuit. Id. at 980. An issue is genuine if it is such that reasonable persons could disagree. If only one conclusion could be reached by reasonable persons, summary judgment is appropriate, as there is no need for a trial on that issue. Id.
The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(4). The initial burden is on the mover to show that no genuine issue of material fact exists. Pouncy, supra . If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Id. The adverse party must then produce factual support to establish that he will be able to satisfy his evidentiary burden of proof at trial. Id. If the adverse party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. Appellate courts review summary judgments de novo , using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Lincoln v. Acadian Plumbing & Drain, LLC , 17-684 (La. App. 5 Cir. 5/16/18), 247 So.3d 205, 209, writ denied , 18-1074 (La. 10/15/18), 253 So.3d 1302.
The interpretation of a contract's provisions is typically a matter of law that properly may be decided on motion for summary judgment. Hall v. Malone , 12-0264 (La. App. 4 Cir. 11/7/12), 104 So.3d 593, 596. In analyzing contracts, certain fundamental legal principles apply. According to the rules of construction, the responsibility of the judiciary in interpreting contracts is to determine the parties' common intent. See , La. C.C. art. 2045. Courts begin their analysis of the parties' common intent by examining the words of the contract itself. See , La. C.C. art. 2046. In ascertaining the common intent, words and phrases in a contract are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. See, La. C.C. art. 2047.
La. C. C. art. 2056 states:
In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.
As the Fourth Circuit noted in Landis Const. Co. v. St. Bernard Par. , 14-0096 (La. App. 4 Cir. 10/22/14), 151 So.3d 959, 962, writ denied, 2014-2451 (La. 2/13/15), 159 So.3d 467 :
The Civil Code instructs us in the proper method of contract interpretation. A contract constitutes the law between the parties. See La. Civil Code art. 1983. And "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civil Code art. 2045 (emphasis added). If the words of a contract are clear, unambiguous, and lead to no absurd consequences, the court need not look beyond the contract language to determine the parties' true intent. See La. Civil Code Art. 2046. Each provision in a contract must be interpreted in light of the other provisions *382 so that each is given the meaning suggested by the contract as a whole. See La. Civil Code Art. 2050. "When a contract is not ambiguous or does not lead to absurd consequences, it will be enforced as written and its interpretation is a question of law for a court to decide." Lalla v. Calamar , N.V., 08-0952, p. 8 (La.App. 4 Cir. 2/11/09), 5 So.3d 927, 932, quoting American Deposit Ins. Co. v. Myles , 00-2457, p. 5 (La. 4/25/01), 783 So.2d 1282, 1286. Meaning and intent of parties to a written instrument is ordinarily determined from the instrument's four corners and extrinsic evidence is inadmissible either to explain or to contradict the instrument's terms. See Lalla , 08-0952, p. 8, 5 So.3d at 932.
A contract is to be construed as a whole, and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. See, La. C.C. art. 2050. Neither should a contract be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Edwards v. Daugherty , 03-2103 (La. 10/1/04), 883 So.2d 932, 941. Courts lack the authority to alter the terms of contracts under the guise of contractual interpretation when its provisions are couched in unambiguous terms. Cadwallader v. Allstate Insurance Co. , 02-1637 (La. 6/27/03), 848 So.2d 577, 580. The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent. Edwards, 883 So.2d at 941.
The Contract For Development Services
A contract or document is ambiguous when its written terms are susceptible to more than one interpretation, there is uncertainty as to its provision, or the parties' intent cannot be ascertained from the language used. Leftwich v. New Orleans Weddings Magazine , 14-547 (La. App. 5 Cir. 11/25/14), 165 So.3d 916, 921. When the terms of a contract are susceptible to more than one interpretation, there is uncertainty as to its provision, or the parties' intent cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or show the intention of the parties. First Bank & Tr. v. Redman Gaming of Louisiana, Inc. , 13-369 (La. App. 5 Cir. 12/12/13), 131 So.3d 224, 228. In this posture, determining the intent of the parties becomes, in part, a question of fact, and the granting of summary judgment is appropriate only if there is no genuine issue as to the material fact. Id.
At issue is the interpretation of Section 5 of the Contract for Development Services. Specifically, Section 5 of the Contract for Development Services provided:
5. PROJECT COSTS-Kimble warrants that the Project construction costs shall not exceed $ 688,944. Kimble shall be responsible for all construction costs for the Project exceeding $ 688,944, except for unforeseen or uncontrollable costs such as asbestos or environmental mitigation and necessary site clean-up. [Emphasis added.]
Kimble argues that in finding that the "unforeseen or uncontrollable" costs are exclusively environmental in nature, the trial court altered the terms of the contract. Kimble asserts that the examples provided in Section 5 were merely illustrative. Village argues that this matter is governed by Section 2 of the contract, which states:
*383 2. SERVICES- Kimble shall handle all aspects of the development and building construction of the Project, including all communications, contracting and invoicing. Further if the Project costs exceed $ 688,944, Kimble shall bear the risk and be responsible for all such costs over and above that amount. " [Emphasis added.]
To ascertain the intention of the parties, who disagreed on the contract's interpretation of the terms, the court properly considered parole evidence. Based upon the evidence presented, the trial court, in its Reasons For Judgment, found that the original contract was drafted by Kimble Development and/or its attorneys and that Kimble Development knew, prior to executing the contract and before the project began, that the proposed building was supposed to be 7,125 square feet yet did not amend its preliminary estimate for the O'Reilly's National Account materials. The trial court concluded:
Defendant maintains that the O'Reilly National account cost overruns were "unforeseen or uncontrollable" costs for which it is not responsible pursuant to Section 5 of the Contract. However, a plain reading of the above provision leads to the commonsense conclusion that the types of unforeseen and uncontrollable costs referenced in Section 5 are environmental-related site costs. In the instant case, the evidence established that the cost overruns resulted from underestimation, not unanticipated environmental costs . The "questions of fact" argument raised by the defendant regarding whether the costs were "unforeseen or uncontrollable" does not apply to the instant case in light of the wording of the contract. [Emphasis added.]
In the instant case, the initial contract between the parties, dated July 10, 2013, makes two references to liability for construction costs of the project, in Sections 2 and 5. Both of those sections are clear that Kimble would be liable for any overruns that qualified as construction costs, although that term is not defined in the contract itself.
CONCLUSION
The parties do not dispute that the additional expense incurred by Village beyond the stipulated amount of $ 713,413.71 in the development contract resulted from costs incurred from the actual building or "construction" of the O'Reilly store. Kimble argues that it was unforeseeable that the costs of the building itself would increase with the addition of square footage to the store. However, the record indicates that Kimble inadvertently and incorrectly estimated the initial construction cost of a 6,800 square foot store instead of a 7,125 square foot store. We agree with the trial court that Kimble's underestimating the cost of the building materials based upon its error in initially providing the accurate square footage of the completed store does not invoke the "unforeseen or uncontrollable costs" exception of Section 5 in the Development Contract between the parties, but instead is governed under section two of the contract which provides that "Kimble shall bear the risk and be responsible for all such construction costs over and above" the amount of its own estimate.
To the extent that Kimble relies on the trial court's reasons for judgment to make an argument that the court erred in finding that the "unforeseen or uncontrollable" costs are exclusively environmental in nature, we note that that appellate Courts do not review reasons for judgment as a part of the judgment itself. La. C.C.P. art. 1918 ; Burmaster v. Plaquemines Parish Governmen t, 07-1311 (La. 8/31/07), 963 So.2d 378, 379. The written reasons for judgment are merely an explication of the trial court's determinations.
*384 State in the Interest of Mason , 356 So.2d 530, 532 (La. App. 1 Cir. 1977). Similarly, this Court has held that oral reasons for judgment are not part of the official judgment which the trial judge signs or from which appeals are taken. Par. of St. Charles v. Young , 99-411 (La. App. 5 Cir. 12/15/99), 750 So.2d 276, 278. The Louisiana Supreme Court has held, however, that a court of appeal can use reasons for judgment to gain insight into the district court's judgment, and we refer to them now for that purpose. See, Wooley v. Lucksinger , 09-0571 (La. 4/1/11), 61 So.3d 507.
Contrary to Kimble's assertion that the trial court made a finding that the "unforeseen or uncontrollable" costs referred to in section five are exclusively environmental in nature, it appears from the record as a whole that the trial court found it unnecessary to make a determination of whether any environmental concerns applied under section five of the agreement. As discussed above, because the trial court concluded that the increased cost was the result of underestimation, a cause that was neither unforeseen nor uncontrollable, he deemed it unnecessary to base his ruling on section five.
After de novo review, we conclude that Village established that it will be able to satisfy its evidentiary burden of proving the there was a meeting of the minds on the terms of the project construction costs provision of the contract. Accordingly, we find that Village is entitled to summary judgment, as a matter of law.
DECREE
The district court judgment sustaining Village's motion for summary judgment, and awarding $ 48,347.28, together with legal interest, is affirmed.
AFFIRMED

As acknowledged by the trial court, these exhibits consisted of:
Exhibit A- Deposition of Michael Kimble;
Exhibit B- Emails between Amy Richardson and Dr. Glazer;
Exhibit C- Email between Amy Richardson and Scott Russell;
Exhibit D- Letter to Scott Russell from Amy Richardson;
Exhibit E- Contract for Development Services;
Exhibit F- Deposition of Kelly Sanders Morgan;
Exhibit G-Contract Addendum;
Exhibit H- Various Invoices and check images/payments;
Exhibit I- O'Reilly Auto Parts Invoice;
Exhibit J- Geotechnical Engineering Report;
Exhibit K- O'Reilly Auto Part-Shell Package Only;
Exhibit L- State of Louisiana-Fire Marshall;
Exhibit M- Spreadsheet of O'Reilly's Account;
Exhibit N- St. Charles Planning Department-Permit;
Exhibit O- Site Order Request/Energy Management System;
Exhibit P- Affidavit of Peter Glazer