HANS J. LILJEBERG, Judge. ■
| gPlaintiff appeals the trial court’s judgment, dismissing her claim for unpaid past due wages, penalties, and attorney fees, and awarding defendant $5,566.79 on its reconventional demand. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

In April of 2012, defendant, New Orleans Weddings Magazine, Inc. (“NOWM”) hired plaintiff, Sarah Leftwich, as an account executive to primarily sell advertising space in its magazine. When she was hired, Ms. Leftwich signed an employment *919 agreement and a non-competition agreement. The owner of NOWM, Jessica Burke, also gave Ms. Leftwich a document entitled, “Account Executive Position,” which set forth the commission and bonus structures for the account executive position.
Pursuant to the Account Executive Position document, Ms. Leftwich had a minimum monthly sales goal of $20,000.00. The document provides that she would receive commissions on her sales, based on the account type, as follows:
Monthly Payment Clients: 1st monthly payment amount paid | Rto sales rep; each month that sales rep is still employed at N.O.W. they will receive 10% of monthly payment amount. (For instance: Monthly payment amount of $150, rep will receive $150 first month, then $15 per month after-wards.)
Pay in Full Clients: 20% commission upon receipt of Payment.
Bridal Show Booth Sales (for booth only sales): 15% flat commission.
Renewals: Sales rep may be provided with existing N.O.W. clients to renew and manage. Commissions for the clients are paid at a flat 12% commission on pay in full clients (paid upon receipt of client payment) and monthly clients (for monthly clients, sales rep will receive 12% of each monthly payment).
The Account Executive Position document also sets forth a bonus structure as follows:
Bonuses:
If Sales Rep exceeds Sales goals, bonuses will be paid based on the following scale:
$23,000-$25,999 in sales payments received in a single month, 3% bonus paid
$26,000 + receives 5% bonus (Emphasis added.)
During her employment with NOWM, Ms. Leftwich submitted payment requests for commissions on a bi-weekly basis. She also submitted several bonus requests during her employment. NOWM consistently paid Ms. Leftwich the amount of commissions and bonuses that she requested.
According to Ms. Burke, in September of 2013, she started noticing that Ms. Left-wich was being paid bonuses, but the income of NOWM was not increasing. An internal audit of NOWM’s accounting records was performed, and it was discovered that Ms. Leftwich had submitted requests for bonuses and commissions based on incorrect numbers. The numbers were not reflective of payments | ¿received by NOWM, as required by the Account Executive Position document; rather, they were based on sales made, regardless of whether or not payment had been received. Ms. Burke confronted Ms. Left-wich with this information, and Ms. Left-wich resigned from her position with NOWM.
On September 23, 2013, Ms. Leftwich sent a demand letter to NOWM for unpaid commissions in the amount of $4,759.00. On September 27, 2013, Ms. Burke sent a response letter to Ms. Leftwich, in which she disputed three of the commissions claimed. In her letter, Ms. Burke also stated that NOWM would not remit any of the commissions claimed by Ms. Leftwich, because the ongoing audit revealed that the amount NOWM overpaid Ms. Leftwich due to her improper bonus requests exceeded the amount of unpaid commissions.
On October 18, 2013, Ms. Leftwich filed suit against NOWM seeking to recover unpaid commissions in the amount of $4,759.00, as well as penalties, pursuant to La. R.S. 23:632; and attorney fees. On November 22, 2013, NOWM filed an answer and reconventional demand, asserting that Ms. Leftwich had been paid all of the *920 amounts due to her and seeking to recover the amount Ms. Leftwieh was overpaid by NOWM.
The matter came for hearing before the trial judge on February 21, 2014. At the hearing, Ms. Leftwieh testified that in April of 2012, she was hired by NOWM as an account executive. She stated that she was given a copy of the Account Executive Position document at her second interview when she was offered the job. However, Ms. Leftwieh did not believe that the document was clear about how bonuses would be paid, because the sales goal was $20,000.00 but the bonuses were to be paid based on payments received. She testified that she did not believe this structure made sense because she was not responsible for collecting Inpayments.[1] According to Ms. Leftwieh, she discussed the matter with Ms. Burke, who agreed that Ms. Left-wich’s bonuses would be based on the amount of sales made, not payments received. Ms. Leftwieh further testified that throughout her employment at NOWM, she was paid the amount requested in all of her commission and bonus requests, and she was not told that they were inaccurate until September of 2013.
On cross-examination, Ms. Leftwieh agreed that her submissions for bonuses and commissions were contrary to the terms set forth in the Account Executive Position document. Ms. Leftwieh also admitted that if her submissions had been consistent with the terms of the Account Executive Position document, she was overpaid approximately $10,000.00. She acknowledged that her submissions for bonuses were based upon “contract signed dates,” not “sales payments received.” Ms. Leftwieh testified that she did not dispute the amount of overpayment asserted by Ms. Burke if bonuses were to be calculated on sales payments received; however, she reiterated that based on her conversation with Ms. Burke, bonuses were to be calculated on the sales made, which would not have resulted in the overpayment alleged by Ms. Burke.
Jessica Burke, the owner of NOWM, testified that she hired Ms. Leftwieh as an account executive. During the interview process, Ms. Burke gave Ms. Leftwieh a copy of the Account Executive Position document, which Ms. Burke prepared and which is the only document reflecting the compensation structure' for an account executive at NOWM. Ms. Burke testified that this document provides that bonuses are to be paid based on sales payments received, because NOWM cannot pay bonuses for contracts that are signed but not complied with, or for contracts for | fiwhich payments are missed or never made. She stated that NOWM “couldn’t agree to pay out a bonus on something I may never get.”
Ms. Burke testified that she does not recall Ms. Leftwieh ever indicating that she did not understand the terms of the Account Executive Position document or raising any issue with the bonus structure. Ms. Burke also denied that she and Ms. Leftwieh made any agreement for Ms. Leftwieh to receive bonuses based upon contracts made, as opposed to sales payments received in a month. She stated that there is no document reflecting a modification of the terms of the bonus structure as set forth in the Account Executive Position document.
Ms. Burke testified that she paid the bonuses and commissions requested by Ms. Leftwieh during her employment, because she trusted that Ms. Leftwieh was submitting true and accurate reports of what was owed to her. Toward the end of *921 Ms. Leftwich’s employment, Ms. Burke began to notice that Ms. Leftwich was being paid bonuses, but the business income of NOWM was not increasing. Ms. Burke stated that she contacted a Mend, Kristen Tran, who is an auditor, and asked if she could review NOWM’s financial records. According to Ms. Burke, Ms. Tran performed an audit, along with Ms. Burke’s assistance, and it was discovered that Ms. Leftwich had been incorrectly submitting bonus requests based on contracts signed, not payments received. Discrepancies in Ms. Leftwich’s commission requests were discovered as well. Ms. Burke contends that the audit revealed that Ms. Leftwich was overpaid $10,099.00. She submitted an audit report in support of her testimony-
At the conclusion of the hearing, the trial court took the matter under advisement. On March 19, 2014, the trial court rendered a judgment in favor of NOWM, dismissing Ms. Leftwich’s claims against it for unpaid wages, penalties, and attorney fees, and awarding NOWM $5,566.79 on its reconventional demand |7against Ms. Left-wich. In its reasons for judgment, the trial court found that the Account Executive Position document was clear and unambiguous, and that Ms. Leftwich incorrectly submitted requests for bonuses and commissions, resulting in overpayments and unjust enrichment. Ms. Leftwich appeals.

LAW AND DISCUSSION

In her first assignment of error, Ms. Leftwich argues that the trial court erroneously found that the Account Executive Position document was clear and unambiguous. She claims that the language pertaining to the bonus structure is unclear because it authorizes a bonus if the sales representative exceeds the sales goal, yet it does not distinguish whether the sales goal is based on sales generated or sales payments received. Further, she claims that it is unclear “whether or not the payments received were to be those payments received on the same sales that were generated in the month where Left-wich would meet her sales goals.”
Whether a contract is ambiguous is a question of law. Derbes v. GBS Properties, L.L.C., 04-1460, p. 5 (La.App. 5 Cir. 4/26/05), 902 So.2d 1109, 1112; Koeniger v. Newsome, 03-1492, p. 4 (La.App. 4 Cir. 2/4/04), 873 So.2d 652, 655. A contract or document is ambiguous when its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties’ intent cannot be ascertained from the language used. First Bank and Trust v. Redman Gaming of Louisiana, Inc., 13-369, p. 7 (La.App. 5 Cir. 12/12/13), 131 So.3d 224, 228.
In the present case, based on our review of the Account Executive Position document, we agree with the trial court that the document is clear and unambiguous. The document clearly specifies that bonuses will be based upon “payments received” in a single month. The document further provides that commissions are to be paid every two weeks based on “payments received.” There |sis no language in the document reflecting that bonuses or commissions are to be based on sales made. Accordingly, we find no error in the trial court’s finding that the Account Executive Position document is clear and unambiguous.
In her second assignment of error, Ms. Leftwich asserts that the trial court erred by failing to consider that the bonus compensation terms agreed to by the parties were not exclusively the same as those terms set forth in the Account Executive Position document. She maintains that she spoke with Ms. Burke regarding the calculation of bonuses and Ms. Burke agreed that her bonuses would be based on sales made, not payments received. *922 Thus, she contends that the terms set forth in the Account Executive Position document were modified.
Ms. Leftwich admits that she received a copy of the Account Executive Position document, setting forth the terms of compensation, prior to accepting the job of account executive at NOWM. Although she claims that the terms of the document were subsequently modified by an agreement with Ms. Burke, Ms. Burke denies that she had any conversation with Left-wich regarding the bonus or commission structures. Ms. Burke further denies that she agreed to vary from the terms of the Account Executive Position document pertaining to payment of bonuses or commissions. Ms. Burke testified that NOWM could not pay bonuses for contracts that were signed but for which payments were missed or never made.
Whether an oral agreement modifies a written contract is a question of fact. Amitech U.S.A., Ltd. v. Nottingham Const. Co., 09-2048, p. 27 (La.App. 1 Cir. 10/29/10), 57 So.3d 1043, 1063, writ denied, 11-0866, 11-0953 (La.6/17/11), 63 So.3d 1036. The party asserting a modification of an obligation must prove by a preponderance of the evidence facts or acts giving rise to the modification. Id.
.On appeal, the reviewing court may not set aside a trial court’s findings in the absence of manifest error or unless they are clearly wrong. Hall v. Folger Coffee Co., 03-1734, p. 11 (La.4/14/04), 874 So.2d 90, 99. In order to reverse the factfinder’s determination, the appellate court must find from the record that a reasonable factual basis does not exist for the trial court’s finding and that the finding is clearly wrong. Stobart v. State, through Dept. of Transp. And Dev., 617 So.2d 880, 882 (La.1993); Cormier v. Cushenberry, 14-70 (La.App. 5 Cir. 7/30/14), 147 So.3d 256, 260-261. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Detraz v. Lee, 05-1263, p. 7 (La.1/17/07), 950 So.2d 557, 561.
In the present case, Ms. Leftwich testified that she and Ms. Burke had agreed that her bonus compensation would be based on sales made, not payments received as set forth in the Account Executive Position document. However, Ms. Burke testified that she never agreed to base Ms. Leftwich’s bonuses on sales made, rather than payments received. The trial court clearly chose to believe Ms. Burke that the terms of the Account Executive Position document pertaining to bonus compensation were not orally modified as asserted by Ms. Leftwich.[2]
Based on the testimony and evidence presented, we cannot say that the trial court erred by failing to find that the terms of bonus compensation set forth in the Account Executive Position document were subsequently modified. This assignment of error is without merit.
In her third assignment of error, Ms. Leftwich contends that NOWM failed to introduce sufficient evidence to establish that the unpaid wage claim was not owed to Ms. Leftwich. She asserts that when her claim for unpaid wages was submitted to Ms. Burke after her resignation, *923 NOWM only disputed three items of |inher request, totaling $349.78. She claims that NOWM did not show that there was a legitimate dispute as to any of the wages claimed, and that NOWM, at the very least, should have paid the wages that were undisputed.
After Ms. Leftwich sent her demand letter to Ms. Burke for $4,759.00 in unpaid wages, Ms. Burke sent a letter in response indicating that she disputed three of the commissions claimed, and she explained why these commissions were being disputed. Ms. Burke further indicated that the ongoing audit of her records revealed that Ms. Leftwich had been overpaid for bonuses in the range of $11,000.00. NOWM refused to remit the unpaid- wages claimed by Ms. Leftwich, because the amount owed by Ms. Leftwich to NOWM exceeded the amount due to Ms. Leftwich for unpaid wages.
The amount that NOWM now claims was overpaid to Ms. Leftwich for bonuses is $10,099.00. Ms. Leftwich was given credit for the undisputed amount of unpaid wages, $4,532.00, when the trial court awarded $5,566.79 to NOWM on its recon-ventional demand. Ms. Leftwich did not prove that she was entitled to any wages above the $4,532.00 for which she was given credit. The record contains sufficient evidence to support the trial court’s finding that NOWM did not owe any unpaid wages to Ms. Leftwich. Accordingly, this assignment of error is without merit.
In her fourth assignment of error, Ms. Leftwich argues that the trial court erred by dismissing her claim for penalties and attorney fees, pursuant to La. R.S. 23:632, because NOWM did not pay the undisputed amount of unpaid wages to Ms. Leftwich in accordance with La. R.S. 23:631.
La. R.S. 23:632 provides for the assessment of penalties against an employer for failure to comply with the provisions of La. R.S. 23:631 pertaining to payment of wages due at the time of discharge or termination of employment. Considering |! ¶ our finding that no wages were due to Ms. Leftwich at the termination of her employment, Ms. Leftwich is clearly not entitled to penalties or attorney fees.
In her fifth and final assignment of error, Ms. Leftwich asserts that NOWM failed to provide sufficient proof that it was entitled to a judgment of any amount for unjust enrichment. She claims that the record does not show that a proper or accurate audit was performed by Ms. Tran or that Ms. Tran was even a certified auditor. Rather, she alleges that Ms. Burke and her staff, who are not auditors, reviewed NOWM’s records, made their own conclusions, and created the audit report and summaries that were submitted in support of NOWM’s reconventional demand. Ms. Leftwich further alleges that some pertinent information is not contained in the audit report, which shows that the audit is clearly flawed.
The record before us contains sufficient evidence to establish that Ms. Leftwich was overpaid approximately $10,099.00 due to the incorrect amounts set forth in Ms. Leftwich’s requests for bonuses and commissions. In addition to the testimony provided, NOWM’s audit report/summaries, answers to interrogatories, and other exhibits were admitted at the hearing. Further, at the hearing in this matter, Ms. Leftwich agreed that if her submissions had been consistent with the terms of the Account Executive Position document, she was overpaid approximately $10,000.00. She further stated that she does not dispute the calculation of overpayments asserted by Ms. Burke or NOWM, if the calculation of bonuses was to be based on payments received instead of sales made.
La. C.C. art. 2299 provides that “[a] person who has received a payment or *924 a thing not owed to him is bound to restore it to the person from whom he received it.” Negligence per se is not a bar to recovery for the payment of a thing not due. Wall v. HMO Louisiana, Inc., 07-744, p. 4 (La.App. 5 Cir. 2/6/08), 979 So.2d 536, 539.
J^jLa. C.C. art. 2298 provides, in pertinent part, that “[a] person who has been enriched without cause at the expense of another person is bound to compensate that person.” The requisite elements of a claim for unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) no other available remedy at law. Pinegrove Elec. Supply Co., Inc. v. Cat Key Const, Inc., 11-660, p. 5 (La.App. 5 Cir. 2/28/12), 88 So.3d 1097, 1100.
In the present case, because the evidence shows that payment of bonuses was to be based upon payments received, not sales made, Ms. Leftwich was overpaid for bonuses during her employment with NOWM. Considering the applicable law, the documents submitted in support of NOWM’s reconventional demand, Ms. Burke’s testimony, as well as Ms. Left-wieh’s testimony that she does not dispute Ms. Burke’s calculation of the overpay-ments made, we find no error in the trial court’s award of $5,566.79 to NOWM on its reconventional demand. This assignment of error is without merit.

DECREE

For the foregoing reasons, we affirm the trial court’s judgment in favor of NOWM, dismissing Ms. Leftwich’s claims for unpaid wages, penalties and attorney fees, and awarding $5,566.79 to NOWM on its reconventional demand. All costs of this appeal are to be paid by plaintiff, Sarah Leftwich.

AFFIRMED

. The Account Executive Position document provides that an account executive is required to "[ajssist in collection of payments owed as necessary.”

. In support of her argument that NOWM agreed to deviate from the terms of the bonus structure set forth in the Account Executive Position document, Ms. Leftwich notes that other terms of the Account Executive Position document were modified, such as the terms for mileage reimbursement. However, NOWM does not dispute that it agreed to pay mileage reimbursement at a higher rate than set forth in the document. Ms. Burke testified that she agreed to pay higher mileage reimbursement after she was informed that the federal rate for mileage was $0.55 per mile.